# WHEELING.

## WAYT v. CARWITHEN et al.

Submitted January 25, 1883— Decided April 21, 1883.

1. A case in which a demurrer to the plaintiff's bill was erroneously sustained. (p. 517.)

2. Any deed or written contract used by the parties for the purpose of pledging real property, or some interest therein, as security for a debt or obligation, which is informal and insufficient as a common law mortgage, but which by its terms shows that the parties intended that it should operate as a lien or charge upon specific property, will constitute an equitable mortgage and may be enforced in a court of equity. (p. 520.)

3. The right to enforce the lien of an equitable mortgage is not lost by the lapse of time, or barred by the statute of limitations, until such time has elapsed as would bar relief upon the instrument creating such lien—the dignity and character of the lien depending upon the nature of the instrument creating it, and not upon the antecedent debt or lien intended to be revived or preserved. (p. 521.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Kanawha, rendered on the 7th day of April, 1882, in a cause in said court then pending, wherein George Wayt was plaintiff, and N. Carwithen and others were defendants, allowed upon the petition of said Wayt.

Hon. F. A. Guthrie, judge of the seventh judicial circuit, rendered the decree appealed from.

The facts of the case are stated in the opinion of the Court.

*J. H. & J. F. Brown* and *Joseph Ruffner* for appellant cited the following authorities:   Code, Va. (1849) ch. 48 § 12;  3 Leigh 365;  2 Min. Inst. 882;  Perry Trusts, §§ 920, 921;  19 Ia. 538;  Ad. Eq. 55;  14 W. Va. 211;  2 Leigh 6;  Ang. Lim. 312;  6 Munf. 352;  13 W. Va. 718.

*George S. Couch* for appellee John T. Halliday cited Code Va. (1849) ch. 186 § 12;  *Id.* ch. 119 § 1;  Freem. Jdgmts. § 468;  20 W. Va. 351.

SNYDER, JUDGE, announced the opinion of the Court:

This suit was instituted in the circuit court of Kanawha county, on November 2, 1881, by George Wayt against Nancy Carwithen and others.   The bill was demurred to, the demurrer sustained and the bill dismissed with costs, and the plaintiff appealed to this Court.

The material allegations of the plaintiff's bill are, that in 1851, James Carwithen by executory contract purchased from Jesse Mills one hundred acres of land on Davis creek in Kanawha county; that the purchase-money for said land remaining unpaid the said Mills by an action in the circuit court of said county obtained a judgment on June 20, 1856, against said Carwithen for four hundred dollars, the amount of said purchase-money, with interest thereon from March 22, 1851, and costs; that, subsequently, by deed, dated November 13, 1857, the said Mills conveyed said land to said Carwithen which deed was duly recorded in said county the day after its date; that at the request of said Carwithen the plaintiff paid to said Mills four hundred and twenty-four dollars and thirty-four cents, the amount due him from said Carwithen on the aforesaid judgment, and thereupon the said Carwithen, by written agreement, dated February 15, 1858, and duly acknowledged and recorded in said county, subrogated the plaintiff to the rights of said Mills in reference to the said land and the lien which said Mills held thereon as vendor, which agreement was made in consideration of the payment of said four hundred and twenty-four dollars and thirty-four cents by plaintiff to said Mills and for

other moneys mentioned therein, but said lien was not to be enforced by plaintiff for four years from the date of said agreement; that afterwards said Carwithen died leaving a widow, the defendant Nancy Carwithen, and two children, John H. and Ellen Carwithen as his heirs at law, and John Slack, jr., became the administrator of his estate; that neither the said James Carwithen nor his representatives have ever paid the plaintiff the said four hundred and twenty-four dollars and thirty-four cents or any part thereof.

The bill further alleges, that on June 2, 1852, *before* the said James Carwithen acquired the legal title to said one hundred acres of land, he executed to J. L. Carr and Isaac Read trustees a trust deed upon his equitable right thereto, and also upon the legal title of another tract of one hundred and fifty acres which had been conveyed to him by John D. Mays in 1851, to secure the payment of two debts, one to E. Baines and the other to Abram Wright; that this trust deed was acknowledged and copied upon the records of said county on the day of its date, but the plaintiff, at the time the aforesaid agreement of February 15, 1858, was executed to him, had no actual notice of said trust deed; that, on July 3, 1860, the said trustees sold said one hundred and fifty acres of land under said trust deed of June 2, 1852, and satisfied the debts therein secured; that, on July 1, 1872, after the satisfaction of the trust aforesaid, the defendant, Nancy Carwithen, widow as aforesaid, claiming that a deed or release had been made to her by one of said trustees and she having a dower interest therein, conveyed her interest in said one hundred acres of land, by deed with special warranty of that date, to Greenbery Slack; that the said Slack, by deed dated July 12, 1872, conveyed the said one hundred acres with general warranty, to John T. Halliday and William Y. Miles jointly; and that said Miles and wife, by deed dated January 31, 1876, sold, quit-claimed and conveyed, their interest in said land to the said John T. Halliday. The bill charges, that no such deed of release as claimed by her was ever executed to said Nancy Carwithen by either of the aforesaid trustees, but if such release was executed it was void; that the legal title to said one hundred acres is vested in the heirs of said James Carwithen, deceased, subject to the

plaintiff's lien aforesaid; that, if it shall be shown that the said Nancy Carwithen acquired the legal title to said land by release from said trustee or otherwise, which is denied, still the conveyance by her of such legal title, and all subsequent conveyances thereof, were subject to the plaintiff's said lien, and that in any event the plaintiff is entitled to have his said lien enforced in a court of equity. The plaintiff, therefore, prays that his said lien may be enforced against said one hundred acres of land and that he may have other and general relief.

The administrator, widow and heirs of said James Carwithen, deceased, and John T. Halliday were made defendants, and the plaintiff exhibited with his bill the aforesaid agreement of February 15, 1858, and made the same a part of his bill. The parts of said agreement necessary to be referred to here are as follows:

"Whereas, the said James Carwithen is indebted to the said George Wayt in the following amounts of money, to-wit: In the sum of four hundred and twenty-four dollars and thirty-four cents, which he has paid to Jesse Mills in discharge of a judgment rendered at the spring term of the circuit court of Kanawha county in favor of said Mills against said Carwithen, and which judgment was for the purchase-money of a tract of land sold by said Mills to said Carwithen, lying upon Davis creek, in the county aforesaid; and also in the further sum of two hundred and sixty-nine dollars and one cent due said Wayt on an open account;"   *   *   *

"and the said James Carwithen being desirous to secure to said George Wayt the payment of the money due as aforesaid, as well as to indemnify and secure said Wayt against all loss or damage which he may sustain by reason of his having become security for said Carwithen in the forthcoming bonds aforesaid, doth hereby covenant and agree that the said Wayt shall be subrogated to the rights of said Mills in reference to the lands aforesaid, and that he may retain the lien which said Mills holds as vendor of said land."   *   *

"And it is further agreed between the parties that the said Carwithen may sell the property aforesaid at any time he may think proper to do so, provided he pay or secure said Wayt against all claims which he may have against said Car-

withen on account of the moneys paid and liabilities assumed as aforesaid. And the said Wayt further covenants and agrees that he will not enforce the vendor's lien which he has, as assignee of Jesse Mills as aforesaid, for four years from the date hereof, provided," &c.

It is stated in the argument before this Court, that the ground, upon which the circuit court sustained the demurrer to the plaintiff's bill, was that the right to relief stated in said bill was barred by the statute of limitations. In reply to this it is urged here by the appellant, *first*, that, even if it appeared upon the face of the bill that the plaintiff's right to relief was barred, the statute of limitations not having been pleaded, the defendants could not take advantage of such bar by demurrer, and *second*, that the statute of limitations is a defense personal to the debtor and cannot be relied on by another party. Whether these questions are material or not in this cause depends upon the fact, whether or not, taking the averments of the bill as true they show that the relief sought by the plaintiff is barred; and to determine that fact it is necessary to ascertain the nature and character of the plaintiff's claim as alleged in his bill and contained in the agreement exhibited as part thereof. The bill avers that said agreement constitutes an equitable mortgage on the land therein mentioned which he is entitled to enforce in a court of equity. Is such the fact?

A mortgage, or trust deed, which cannot be enforced by a sale under the power or by a judgment of foreclosure, on account of some informality requisite to a complete instrument, will nevertheless be regarded as an equitable mortgage, and the lien will be enforced by proceedings in equity. The attempt to create a security in legal form upon specific property having failed, effect is given to the intention of the parties, and the lien enforced as an equitable mortgage. Any agreement between the parties in interest that shows an intention to create a lien may be in equity a mortgage. *Daggett* v. *Rankin*, 31 Cal. 321. As stated by Judge Story, "If a transaction resolves itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage." *Flagg* v. *Mann*, 2 Sum. 486, 533. Effect has been given upon this principle to an instru-

ment given by the maker of two notes to his sureties, the
notes reciting that they were for the purchase of land and
providing that in case the maker should fail to pay them,
binding him to convey the said land to his said sureties.
This was held, upon the failure of the maker to pay the notes,
to be a mortgage in favor of the sureties. *Courtney* v. *Scott*,
Litt. Sel. Cas. 457; *Lyon* v. *Lyon*, 67 N. Y. 250. So an
agreement on the back of a note, making it a charge upon
particular land, is an equitable mortgage. In this way an
agreement intended to operate as a revival of a mortgage
note, which had been paid, may be rendered effectual as an
equitable mortgage, although ineffectual to revive the mort-
gage lien. *Peckham* v. *Haddock*, 36 Ill. 38. And so an
agreement in a lease, that the lessor " is to have a lien " upon
certain property for the faithful performance of the lessee's
obligation to pay rent, is in effect a mortgage. *Whiting* v.
*Eichelberger*, 16 Iowa 422. See 1 Jones on Mortg. §§ 162
to 171.

From these authorities I conclude that any deed or written
contract used by the parties for the purpose of pledging
real property, or some interest therein, as security for a debt
or obligation, which is informal and insufficient as a common
law mortgage, but which by its terms shows that the parties
intended that it should operate as a lien or charge upon
specific property, will constitute an equitable mortgage and
may be enforced in a court of equity.

Under the law thus considered it is apparent that the
agreement set out in the plaintiff's bill in this cause contains
all the requisites of an equitable mortgage. It is in writing,
under seal and signed by the parties, and manifests, by its
terms, an unmistakable intention by the parties thereto to
create or preserve a lien on a specific tract of land as security
for a particular debt. It is contended, however, that the lien
created by said agreement is at most but a judgment-lien,
and more than ten years having elapsed it is barred by the
statute of limitations. I do not regard such as the correct
view. It is immaterial whether said debt was a lien prior to
the date of the agreement or not. In this case there was no
lien in fact, because it was paid off by the plaintiff and the
lien thus paid off could not be revived by the parties. The

language used in the agreement is not very technical or accurate, but there is no difficulty in ascertaining from their language what the parties intended and what they in fact did. They intended that said agreement should operate as a security to the plaintiff for the debt paid by him to Mills; and the extent and character of the security given or the lien thereby created depends, not upon the antecedent debt or lien, but upon the legal qualities of the instrument creating the lien or security. The said agreement, being under seal, the lien created by it could not be affected by the statute of limitations for twenty years from the time the plaintiff's right to enforce it accrued. But it being an equitable lien the statutory bar could only apply, if at all, by analogy, and if the statute does not apply, then it can only be barred by the presumption of payment arising from the lapse of time. So in either event the bar would not apply within less than twenty years from the time the cause of action accrued. The agreement is dated February 15, 1858, and was not, by its terms, to be enforced for four years from its date, and this suit having been brought November 2, 1881, it did not appear, therefore, upon the face of the bill that the plaintiff's right to relief was barred. Such being the fact it becomes unnecessary to decide in this cause, whether or not the statute of limitations can be made available on demurrer or whether any person other than the debtor can plead said statute.

The trust-deed of June 2, 1852, to Carr and Read, trustees, was given upon an equitable title and under our statute, as well as that of Virginia, the recordation of said trust-deed, did not operate as constructive notice to the plaintiff who acquired his lien after the said Carwithen had obtained the legal title. Code of Va., sec. 12 chap. 118; *Hoult* v. *Donahue*, *supra.*

The agreement giving the plaintiff a lien was duly acknowledged and recorded before the execution of the deed from the widow, Nancy Carwithen, to Greenbury Slack; consequently, the said Slack and all vendees of said land through title derived from him were purchasers with notice of the plaintiff's equitable lien, and hold the land, if they acquired any title whatever, subject to the rights of the plaintiff. Code of Va. sec. 4 chap. 118 p. 566.

For the reasons aforesaid, I am of opinion that the said decree of the circuit court was erroneous and must be reversed with costs to the appellant against the appellee, John T. Halliday, he being the only defendant who appeared in the court below; and this Court proceeding to render such decree as the said circuit court ought to have rendered, it is ordered and decreed that the demurrer to the plaintiff's bill be overruled; and this cause is remanded to the said circuit court with leave to the defendants to answer the plaintiff's bill and for further proceedings to be had according to the principles settled in this opinion and further according to the rules, principles and practice of courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.　CAUSE REMANDED.