# CHARLESTON.

## THOMAS *v.* LINN.

Submitted June 12, 1894—Decided December 15, 1894.

1. **BOND—ASSIGNMENT—DEED OF TRUST.**
   The assignment of a bond or note secured by deed of trust carries with it, as an incident of such assignment, the benefit of the lien of the deed of trust, unless excluded expressly or by fair and reasonable implication.

2. **BOND—ASSIGNMENT—DEED OF TRUST—PARTIAL PAYMENT.**
   A credit properly indorsed on such bond of an unconditional payment made by the trust debtor, and so entered at his instance, extinguishes the debt and lien to that extent; but it may be erased by the express agreement of the creditor, the debtor, and the party to whom the bond is then assigned; but the question whether the benefit of the deed of trust also passes thereby, the assignment being silent on the subject, is open to independent proof.

3. **BOND—LIABILITY OF ASSIGNOR.**
   In the absence of an express agreement to the contrary, the assignment of a bond or non-negotiable note imports a guarantee that the assignee shall receive the full amount of the bond or note assigned, if he fail to collect the same after the exercise of due diligence.

4. **BOND—LIABILITY OF ASSIGNOR.**
   But if the amount paid for the bond is shown, that, with its interest, is the true measure of the recovery.

5. BOND—LIABILITY OF ASSIGNOR.
   And he can not recover merely on default of the debtor, but only after legal recourse against him has been exhausted, unless it appears that before the bond fell due the debtor became insolvent, or from some cause a suit against him would have been unavailing.

6. TRUST FUND—TRUSTEE—PAYMENT.
   Where a trustee pays a trust fund to one who receives it knowing he is not entitled, the true beneficiary may bring his suit in equity against both; but the decree should be against the one improperly receiving it as the principal debtor, and against the trustee, treated as his surety, to make good any deficiency.

C. A. SNODGRASS for appellants, cited 34 W. Va. 799.

W. S. MEREDITH and H. G. LINN for appellee, cited 26 W. Va. 710; Code, c. 126, s. 5, 6.

HOLT, JUDGE :

On appeal from a decree of the Circuit Court of Marion county, rendered against H. R. Linn et al. in favor of Benjamin P. Thomas, on March 17, 1893, for one hundred and sixty three dollars and fifty cents and costs. The cause was referred to a commissioner, and from his report, and the pleadings and evidence, the facts are as follows:

On the 1st day of October, 1885, Valentine Nichols sold and conveyed to A. W. Henderson, for the sum of four thousand dollars, a certain tract of land containing one hundred and fifty five acres, situate in Monongalia county, W. Va., on the Middle Fork of Dunkard creek. Henderson executed to Nichols his eight single bills for five hundred dollars each, all dated October 1, 1885, bearing interest from date and due, respectively, in one, two, three, four, five, six, seven and eight years after date; and to secure the payment thereof, on the same day, together with his wife, conveyed the land in trust to Wilson Haught, trustee. Being silent as to the terms of sale, they were determined by the statute on the subject then in force, viz. the act of 1882. See Acts 1882, c. 140. On the 29th day of March, 1886, the deed of trust was admitted to record; and on the 26th day of April, 1886, Valentine Nichols assigned and transferred these eight purchase money bonds to Henry Haught, but without

recourse. Such assignment was written out in full on the back, and signed by Nichols, and also signed by Haught, saying that "he accepted them as 'assigned without recourse." On the fifth day of February, 1887, A. W. Henderson paid Haught thirty five dollars, which was credited on the bond due one year after date. On the ——— day of ———, 1887, Henry Haught assigned and transferred these bonds to defendant H. R. Linn, to be collected, and proceeds applied in payment of a debt due from Haught to Linn. On the 1st day September, 1887, the obligor, Henderson, paid Linn the sum of four hundred dollars, which was in his presence credited on the bond first due. This money Henderson borrowed from the plaintiff, Thomas. Henderson was to lift the bond for Thomas to hold as his security. But such a proposition was not made to Linn, or to Haught, who had no knowledge of such arrangement, but the payment of the four hundred dollars was absolute and unconditional. The land is shown not to have been worth enough to pay the deed of trust, and Henderson, the debtor, had no other means of payment. (Such payment of the four hundred dollars was equivalent to getting that much on an insolvent debt, whereas an assignment would have given the assignee the first payment out of the proceeds of the sale of the land under the trust deed, and thus be to the disadvantage of the trust creditor making such an assignment, and retaining, as in this case, the other seven bonds.)

On the 21st day of September, 1887, W. E. Mallory, as attorney at law for plaintiff, Thomas, having the claim of four hundred dollars to collect for his client, B. P. Thomas, went to Monongalia county to see Henderson. He found him to be insolvent, as his farm was covered by the deed of trust, which was for its full value and more. He and Henderson then went to H. R. Linn, and Mallory, for Thomas, paid Linn one hundred and twenty three dollars and fifteen cents, the balance of the first bond, and Linn, according to his testimony, only wrote his name across the back, and delivered it to Mallory, who delivered it to his client, Thomas. The credit of four hundred dollars was erased, and on the bond

was written the following assignment: "In consideration of five hundred and twenty three dollars and fifteen cents, I hereby assign and transfer the within note to Benjamin P. Thomas. September 21st, 1887. Signed. H. R. Linn."

The facts in controversy relate to this real or apparent assignment, Mallory and Henderson testifying that the four hundred dollars credit was erased with Linn's consent, and the assignment, as written by Mallory, was signed by Linn, and all done with the consent of Henderson, who was present; whereas Linn says he did not erase the credit of four hundred dollars, did not consent to it, and does not know who made the erasure, but on the payment of the balance signed his name in blank, so that the note could be shown and delivered to Thomas as paid by him for Henderson. This bond Mallory delivered to Thomas, who notified the trustee, Haught, that he was the holder and assignee. In pursuance of notice given and of the deed of trust, the trustee, Wilson Haught, on the 10th day of February, 1891, and in front of the court house of Monongalia county, sold the land at public auction to the highest bidder on the terms that one-third was to be paid in cash, one-third in one year, and one-third in two years, with interest. Of the time and place of this sale plaintiff had actual notice. Defendant Linn became the purchaser, at the price of three thousand, nine hundred dollars, of which sum he paid ninety five dollars and eighty cents, amount of commission and costs of sale, leaving as net proceeds three thousand, eight hundred and four dollars and twenty cents, which was applied in discharge, to that extent, of the trust-deed bonds, seven in number, held by Linn. These bonds, principal and interest, on that day amounted to four thousand, six hundred and twenty five dollars and twenty five cents, and the net proceeds of sale left the sum of eight hundred and twenty one dollars and five cents unpaid. By deed of that date, *viz.* February 10, 1891, the trustee, Wilson Haught, by apt and proper deed conveyed the land to Linn, the purchaser.

On the 11th day of August, 1891, plaintiff, Benjamin P. Thomas, brought this suit in chancery against Hugh R. Linn and Wilson Haught, trustee, setting out the facts al-

ready stated, and, in addition, that defendant Linn, on the 21st day of September, 1887, assigned to him the bond already mentioned, setting out the assignment in *haec verba*, and making an exhibit of the bond on which it was written, charging that no part of said bond had been paid except the credit indorsed of thirty five dollars, and that the residue was due and should be paid to the plaintiff first out of the proceeds of the sale of the land; that the trustee refused to pay the same, but permitted Linn, the assignor of this bond and the holder of the others, to retain the purchase money for the payment of what was due him, in violation of plaintiff's right to be first paid, *etc.*, and he prayed that Linn and Haught might be compelled to account for the proceeds of sale, *etc.*, and for general relief. Defendant Linn answered, giving the facts as already stated, and the assignment as he claimed it. The bill was taken for confessed as to defendant Haught. Defendant Linn offered to pay and did pay into court one hundred and fifty six dollars to be paid to plaintiff, being the amount, with interest, of the sum paid to him by Mallory; protesting that he did not owe it, but was willing to pay it, *etc.*, to avoid further litigation. By order of 22nd day of November, 1891, the Circuit Court referred the cause to a commissioner in chancery, who was directed *First*, to settle the accounts of Wilson Haught as trustee, ascertain what funds had come into his hands, how he had disposed of the same, and the liens on the funds, with amounts and priorities; *second*, take such evidence as either party might desire touching the matters in issue; *third*, and report to court, together with such other matters, specially stated, as he might deem pertinent, or any party in interest require, and return with his report all evidence by him taken or read. On the 6th day of March, 1893, the commissioner filed his report, to which no exception was taken; and on the 17th day of March, the cause coming on to be finally heard on the papers formerly read and the report of the commissioner, the court pronounced the decree for plaintiff against defendant Hugh R. Linn as the one primarily liable, and the defendant Wilson Haught as his surety, for the sum of one hundred and sixty

three dollars and fifty cents,with interest and costs, with leave to sue out execution. And from this decree the appeal was allowed plaintiff, Thomas, as already stated.

"Where questions purely of fact are referred to a commissioner, his findings, while not as conclusive as the verdict of a jury, will be given great weight, and should be sustained, unless it plainly appears that they are not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court, where the findings of the commissioner have been approved and sustained by the decree of the inferior court." *Handy* v. *Scott*, 26 W. Va. 710. Each party in his argument insists on the finding of the commissioner as correct, and as favorable to his view; so that we may infer that his statement as to the one main disputed matter of fact is either not quite full or not quite clear. As to this we shall see further on. The instrument in this case set up by plaintiff is a bond, or, more properly, a single bill, being under seal—having a scroll affixed thereto by way of a seal which is recognized as such in the body of the instrument (section 15, chapter 13 page 123, Code); but the sum to be paid is not by way of penalty, and it has no condition; hence it is properly a single bond or single bill. See *Clegg* v. *Lemessurier*, 15 Grat. 108. It is a specialty, and therefore non-negotiable by our decisions (See *Laidley's Adm'r* v. *Bright's Adm'r*, 17 W. Va. 779); and also because it is not payable at a particular bank, *etc.*, as required by section 7, chapter 99, Code, which defines what shall be negotiable paper when payable in this state. Being non-negotiable the legal title can not pass by assignment—death alone can pass the legal title—but the equitable owner by assignment may sue in his own name at law, under our statute (see section 14, chapter 99, Code); and, whether overdue or not, the assignee steps into the shoes of the assignor, taking it subject to all prior equities between previous parties (see 1 Daniel, Neg. Inst. §§ 1-31) being in no better situation than the assignor; for the holder can only sell and transfer such interest as he has (*Stockton* v. *Cook*, 3 Munf. 68) but it seems not subject to any equity of a third person not a party to the bond, of which he had no notice (*Broadus* v. *Rosson*, 3 Leigh,

12). Where a trustee misapplies trust funds by paying them to a person who is not entitled to receive them, and the person thus receiving them knows that such payment is in violation of the trust, the trustee alone may be made to account for the misapplied funds; but the first liability is upon the one improperly receiving the funds, if before the court, and he should be decreed to refund, and the trustee be treated as his surety. See *Vance* v. *Kirk*, 29 W. Va. 344, 353 (1 S. E. Rep. 717). The assignor of a bond is in this State liable to the assignee, who, having used due diligence to recover the money from the obligor has failed to do so. *Mackie* v. *Davis*, 2 Wash. (Va.) 281. And by statute he may sue the remote as well as the immediate assignor, but not merely on default of payment of the principal debtor, but only when legal recourse against him has been exhausted (4 Minor, Inst. pt. 1, p. 26) or the debtor was insolvent, so that a suit would have been unavailing (see *Peay* v. *Morrison*, 10 Gratt. 149).

After the bonds had been transferred by Henry Haught to defendant Linn, the trust debtor, Henderson, on September 1, 1887, made to Linn an absolute and unconditional payment of four hundred dollars, which he caused to be and saw entered by Linn as a credit, as follows: "Benton's Ferry, September 1, 1887. Cr., by cash, four hundred dollars ($400.00)." This fact the commissioner reports. It is conceded that this credit was properly entered according to the fact. That much cash was paid by the debtor, and received by the creditor, in extinguishment of that amount of the debt. It was an absolute discharge *pro tanto* of the obligation. Could it be resuscitated or revived? the commissioner asks. If it could not be revived, the commissioner says there remained due to plaintiff on that bond the balance, to wit, one hundred and twenty three dollars and fifteen cents, with interest from September 1, 1887, till paid, and that to that extent plaintiff, Thomas, had at the time of the sale by the trustee, a lien on the land, and on the proceeds of sale, and defendant Linn had the next lien, amounting, on 10th of February, 1891, to four thousand, six hundred and thirty dollars and sixty six cents.

Next comes that part of the report which seems to be

somewhat obscure. By some transposition and paraphrase, I take it to mean, in substance, as if it read as follows: "Your commissioner, in consideration of the evidence, is of opinion that the proofs establish the fact to be that the assignment of said bond, as claimed by plaintiff to have been made by defendant H. R. Linn, on the 21st day of September, 1887, was actually made by defendant Linn under certain circumstances, one of which is that when the assignment was made, Henderson, the debtor, had made a payment thereon of $400, leaving at the date of the assignment only the unpaid balance of one hundred and twenty three dollars and fifteen cents capable of being assigned, if the part thus discharged by payment could not be and was not revived and restored to its original binding force as an unpaid part of the debt by the erasure of the credit of four hundred dollars." Defendant Linn received this money as being the money of Henderson. It was not paid as advanced by any one. He was not asked to receive it, and did not receive it, under any special promise or agreement that the plaintiff or any one else should be to that extent substituted to the rights and remedies of Linn, as the trust creditor under the deed of trust. Plaintiff, if he advanced the money, was then unknown in the transaction; was a stranger, under no obligation to pay; and could not and did not thereby acquire the right to be substituted or subrogated to the place of the creditor, thus to that extent paid. In fact, we may presume that the creditor, if he had known the legal effect, would not have received that amount on any such condition; for he had nothing to look to for the payment of his debt except the land, and that was confessedly insufficient. But it is said that such is the legal effect of the assignment of the first bond, which Linn did make to plaintiff on the 21st day of September, 1887, in consideration of the one hundred and twenty three dollars and fifteen cents actually paid or of the five hundred and twenty three dollars and fifteen cents recited as the consideration of the assignment. But the written assignment could not transfer that which the assignor did not have, and one hundred and twenty three dollars and

fifteen cents was all that was left of the bond. He is not concluded by the recital of the amount of the consideration, for the true consideration in such cases is open to proof; for it, with its interest, measures the amount of the recovery in a suit to recourse it against the assignor. *Mackie* v. *Davis*, 2 Wash. (Va.) 219; 2 Sedg. Dam. (8th Ed.) § 704. Besides, it would be but a receipt, and a receipt is but a fact open, as other facts, to independent proof. The four hundred dollars, as revived, only passed through Linn as a conduit. It really emanated from Henderson, and was assigned, in substance, as his, and for him, in payment of his debt to plaintiff. The law is well settled that, in general, the assignee for value of a bond or note non-negotiable, secured by deed of trust, although assigned without recourse (*Jenkins* v. *Hawkins*, 34 W. Va. 709 (12 S. E. Rep. 1090) takes the benefit of such security as an incident of the assignment (*Tingle* v. Fisher, 20 W. Va. 497); and in this state the order of payment out of the proceeds of sale is determied by the order of time of assignment, and not by the order in which the bonds fall due, unless otherwise provided expressly, or to be plainly inferred from the transaction (*Schofield* v. *Cox*, 8 Gratt. 533). Neither, as a general rule, can such legal effect of a written assignment be contradicted or changed by parol evidence, but the true consideration can be shown to be other than that recited in the assignment. But where the assignment constitutes only a part of the one transaction, it must be open to that extent, at least, to parol proof. *De La Vergne* v. *Evertson*, 1 Paige, 181. A stranger, or one who is under no obligation to pay the deed of trust, may have the right of subrogation by contract with the trust debtor, or, where it is his interest or duty to pay, he may have such right, as matter of law, so far as it does not conflict with some superior equity. But a proper unconditional payment by the trust debtor is an extinguishment *pro tanto* of the trust debt.

And this brings us to the first question here involved. Can such extinguished debt be revived, and, if so, how and with what effect on the lien? In this case, looking at it from the standpoint claimed by plaintiff to be the correct

one, the credit of four hundred dollars was erased with the consent of the owner of the bond to whom the payment had been made, at the instance and in the presence of the trust debtor, so that the creditor might assign the whole bond thus relieved of the credit to the plaintiff, which was done. It is well settled that the lien of the deed of trust could not be thus revived by the mere agreement of the trust debtor and trust creditor, as against third persons who have liens on the property. See *Marvin* v. *Vedder*, 5 Cow. 671; *Winslow* v. *Clark*, 2 Lans. 377; *Averill* v. *Loucks*, 6 Barb. 20; *De La Teryne* v. *Evertson*, 1 Paige, 181. But I know of no rule of law that forbids the making of such new contract in the way in which this one was made, except that it is liable to be scrutinized closely, and raise a demand for certainty of proof, owing to the obvious facilities it affords for fraud and abuse. I also take for granted that the benefit of the deed of trust would pass as an incident of such assignment of the debt, unless a different intent was manifest from the whole transaction; and, as the vital point—the fact and purpose of the erasure of the credit—lies in parol, such different intent may be presumed from the circumstances of the case; for the subject matter assigned is the amount of an erased credit. The avowed object of the erasure and assignment of the bond to plaintiff was that it might stand as security for a still subsisting debt due from Henderson, the debtor to Thomas, from whom the money had been borrowed to make the four hundred dollar payment. Would that object be subserved without reviving the lien of the deed of trust, which was separable from and was not a necessary part of it? Defendant Linn says in his testimony that he signed his name in blank on the note, and intended thereby to assign the same to Thomas to the extent of one hundred and twenty three dollars and fifteen cents. In such an exceptional case, it is no answer to say that he did it with his eyes open, and under a misapprehension of the law, which passed the benefit of the deed of trust, with the assignment as an incident; and he can not complain of a mistake resulting from his own ignorance of the law, but must suffer the consequences. It is the true subject-matter of the assignment

that we are looking for, and when Linn, the owner of the trust debt by his assignment, transferred the bond thus re-suscitated to the plaintiff, Thomas, is there anything in the transaction to show that it was not intended that the bene-fit of the deed of trust was to go with it? That is the ques-tion. It is true that rules of law, as well as rules of lan-guage, may interfere to prevent a construction of the instru-ment in accordance with the intent of the parties (2 Pars. Cont.[8th Ed.] top. p. 498); and that, except in a limited sense, we can not travel outside the "four corners of the paper," but must take the words as there written, in their ordinary sense, as indicating the intent and incidents the law imputes. Yet it is often impossible to tell what a man has said, as to the subject-matter of the contract, until the words used have been translated into things and facts by parol evidence, thus ascertaining what he meant to say. Any relevant evidence, therefore, which fairly partakes of the nature of explanation of the subject-matter, and is reasonably calculated to place the court in the situation of the contracting parties, will, in general, be received. See Best, Ev. (Chamberlayne's Ed.) § 230, note c, and cases cited. While the subject-matter of the assignment, *viz.* the bond, can not be varied or contra-dicted, or even qualified, inconsistently with the written terms of the contract, yet that does not prevent the court from putting itself in the place of the contracting parties, thus placed, read the assignment, and apply it to the resus-citated bond as its proper subject-matter shorn of the trust lien, which would have been its incident in the case of an ordinary assignment; for it is by no means a necessary or in-separable incident. The erasure of the credit is not men-tioned in the assignment. Such erasure, as matter of fact, when, by whom, and for what purpose done, lies in parol wholly, and is, besides, a matter about which the recollec-tion of some of the witnesses is greatly at variance. Plain-tiff sets up no claim to the benefit of the deed of trust, ex-cept as an incident of the assignment of the bond. Defend-ant Linn says that the credit was not erased by him, or with his consent; that he assigned to plaintiff the balance due on the bond, and no more, and delivered the bond to the agent

of plaintiff, to show how the bond and its payment stood as between plaintiff and Henderson, the debtor. Even in plaintiff's view, it was a new contract between these three parties, and, viewed by the light of all the facts surrounding it, did not have the effect, by any reasonable or necessary implication, of reviving and passing the benefit of the deed of trust as to that part which had been unconditionally and properly paid, and which was thereby discharged and extinguished.

Owing to the peculiar circumstances of the case, I have reached this conclusion, but not without great hesitation and doubt. But, however this may be, this contract as to the lien depends for its one efficient factor upon the mere fact of running a pen through a credit indorsed on the bond; and that is, at least, brought into some doubt and dispute as to reviving and passing the lien for the four hundred dollars. It is an improbable contract, except on the theory that the one who made such an assignment did not suppose it could have any such legal effect. It would be a hard bargain; taking from defendant Linn, without any but a technical consideration, a substantial part of the only security he has for the rest of his debt—a security already insufficient. The plaintiff asks what, under some circumstances, would be akin to the specific performance of a contract in the matter of the cession of a real estate security. The court would refuse such relief, unless made quite sure of its real merit, as well as of such disputed fact. The Circuit Court gave the plaintiff all he had any right in conscience at least, to ask—the money he had paid defendant Linn, with its interest; and, if it were a case of recoursing the bond, the amount paid, when it affirmatively appears, is the true measure of the sum to be recovered.

Defendant assigns as cross error that there should not have been a decree against him for costs, but in this there was no error. He admitted his liability to pay the sum of one hundred and twenty three dollars and fifteen cents and interest, and offered to pay and did pay it into court, but he had not tendered it to plaintiff before suit brought. The decree complained of should be affirmed.

## ON RE-ARGUMENT.

The finding of the commissioner is not excepted to. On the contrary, each party relies upon it as a finding in his favor. That part reads as follows: "Your commissioner believes, considering the evidence of W. E. Mallory, which is objected to, that the proof sustains the fact that the assignment made by the defendant H. R. Linn, as claimed to be made under certain circumstances on the 21st day of September, 1887, was actually made, but is further of opinion from the evidence that the credit of four hundred dollars on said note paid by the maker, A. W. Henderson, was an actual payment by him on said note. As to the reviving the same in favor of the plaintiff, Benjamin P. Thomas, is a question your commissioner refers to your honor for decision." The fair meaning of it is, considering evidence to which no exception was taken, that the credit of four hundred dollars was erased, and the assignment on the bond written and signed in the presence of the three parties to the agreement —plaintiff, the general creditor; Henderson, the trust debtor; and Linn, the trust creditor by assignment from Haught —but it also appears that the four hundred dollars was a payment, theretofore independently made, which extinguished the lien of the trust deed to that extent. Whether the lien could be so revived as to affect Linn's lien for the part still held by him, the commissioner submitted to the court as a question of law. There is a certain class of cases in which the lien may be revived, or, if not revived, effect may be given to the agreement to charge the land as an equitable mortgage. As a case of this kind, see *Packham* v. *Haddock*, 36 Ill. 38. In *Wayt* v. *Carwithen*, 21 W. Va. 516, the cases are examined, and the doctrine discussed by Judge Snyder, and the general principle stated as follows: "Any deed or written contract used by the parties for the purpose of pledging real property, or some interest therein, as secured for a debt or obligation, which is informal and insufficient as a common-law mortgage, but which by its terms shows that the parties intended that it should operate as a lien or charge upon specific property, will constitute an equitable mortgage, and

may be enforced in a court of equity." A mortgage, after payment, becomes *functus officio*, and neither the mortgagee, nor any one else, as a general rule, has any power to transfer it as a subsisting security, or to revive it to secure the same or any other liability. 1 Jones, Mortg. § 943; 2 Minor Inst. 365; *Pelton* v. *Knapp*, 21 Wis. 64; *McGiven* v. *Wheelock*, 7 Barb. 22. And the lien may be discharged or extinguished, and the debt remain, and the debt may be revived without reviving the lien. See *Edgington* v. *Hefner*, 81 Ill. 341; *Sherwood* v. *Dunbar*, 6 Cal. 53; 15 Am. & Eng. Enc. Law, p. 877.

In ordinary cases of assignment, the rule is well settled in this State that, unless there be an agreement to that effect, the assignor will not be permitted to come in competition with his assignee, if the proceeds of sale of the trust property are insufficient to pay the whole; and that rule the Circuit Court applied in this case to the extent of that part really owned and assigned as for himself by Linn to wit, the balance unpaid, one hundred and twenty three dollars and fifteen cents. The four hundred dollars credit was erased at the instance and for the benefit of Henderson and his general creditor, the plaintiff, and the amount then assigned for their benefit and at their instance by Linn to Thomas, in payment or security of Henderson's general debt to Thomas. Linn was the mere trustee or conduit through whom the parties giving and taking carried out the transaction, and if by implication, and without writing—for Henderson, the owner of the land, signed none—the erasure had the effect to revive the extinguished lien, it was done, in the view of a court of equity, by Henderson and for Thomas, and for their benefit, and not by or for defendant Linn. Plaintiff, in proving his case, proves this; but the case proved is by no means the case alleged in the bill. Linn had no right to the four hundred dollars that had been once paid to him by Henderson in absolute extinguishment *pro tanto* of the deed of trust. If Henderson had the four hundred dollars by erasure of the credit brought to life in Linn, it was but for an instant, as a means of transferring it to plaintiff, Thomas, in security of his unsecured debt; for all that Linn assigned as owner, all that

he owned and could thus assign, the court, by the decree complained of, gave Thomas the priority of payment. If so many points can be strained and legal difficulties be tided over, to revive an extinguished lien, or create a new equitable one, in order that plaintiff may have a lien against the land of his debtor, Henderson, for his general previously contracted debt, why may not the facts be taken as plaintiff has proved them, and his demand be thus limited, as equity and good conscience require? for he is in a court of equity, on a purely equitable demand. No rule of evidence stands in the way of getting at the truth. If there was, plaintiff himself has opened the door, and let in the light. If a parting line has to be made separating what Linn owned and assigned as his own from what he did not own but as trustee or conduit, plaintiff has drawn such line, safely distinct, showing what part of the fund is his, and what part he can not take, without overriding a higher equity than his own; and, for the same reason that plaintiff takes priority over Linn as to the part assigned by him as owner, he does not take priority as to the part assigned by Linn as Henderson's *quasi* trustee. Such limitation of the rule proves the rule by giving the reason for it, for, in showing where the rule stops, it shows why it goes thus far; for the lien of the four hundred dollars, if resuscitated at all, is the incident and accessory of that part of the debt assigned which only belonged to Linn as Henderson's trustee. What Linn did under such circumstances did not, in legal effect, by any fair intendment, operate as a waiver on his part of his right of priority over the new equitable mortgage for the four hundred dollars. See *Morrow* v. *Mortgage Co.*, 96 Ind. 21, 26; Sheld. Subr. § 248. If this case falls within the principle laid down in *Wayt* v. *Carwithen*, it would be because Henderson has given a new equitable mortgage on his land to plaintiff for the payment of the four hundred dollars revived by erasure for his own benefit, and the benefit of the plaintiff, his general creditor. The extinguished lien was not expressly revived, nor its revival in any way sought or mentioned expressly, when we might reasonably have expected it, or for something, at least, to have been said about the erased credit, and not leave it to stand

apparently without having had anything to do with the transaction—a dangerous proceeding and liable to great abuse—and the debt, when revived, could well stand alone, and the bond subserve a purpose, without the lien on the land. But no doubt Henderson's object was to create a new equitable lien for the debt of his general creditor, the plaintiff. Whether he succeeded in such purpose we need not discuss, for, according to the plain meaning of the general doctrine laid down in *Wayt* v. *Carwithen*, his equitable mortgage would only begin where the subsisting one for one hundred and twenty three dollars and fifteen cents stopped; and where the consideration was exhausted, and from that on, a court of chancery would only treat it as good and as a lien in subordination to the higher equity of Haught, Linn, and other assignees of the unpaid purchase money secured by deed of trust, and would not create for plaintiff, Thomas, or subrogate him to any lien to the manifest prejudice of those standing on higher ground. The four hundred dollars was not paid by Henderson or received by Linn with any agreement or understanding of subrogation, expressed or implified, in fact or in law, but in absolute extinguishment, thus far, of the trust debt. Haught, the mortgagee, was not a party to the transaction at all; is not a party to the suit. How do we know how defendant Linn can or will account to him as to the unpaid balance of the deed of trust? And the trust debt was thus increased in favor of a stranger to the extent of four hundred dollars, and the proceeds of the sale of the land fell short much more than that amount of paying off the trust debt. This three sided agreement between Henderson, Thomas, and Linn, put forward in the proof, and the sole foundation of any further or other relief than the relief the Circuit Court gave, is not alleged or in any way alluded to in plaintiff's bill, or in any other pleading; and Henderson, the revivor of the extinguished lien, or creator of the equitable mortgage sought to be enforced, was not and is not before the court. His name is not in the record except as a witness, nor does the bill show any necessity for making Henderson a party by reason of the tripartite contract, for that is not mentioned. Still Henderson was the owner of

the land sold under the trust deed, and interested in the distribution of the fund.

The decree not asked for, or any other than the one pronounced and complained of here, would not be justified by either the pleadings or the proof. The pleadings might have been amended, and the missing party brought in, but it was not asked for, and if given, would as far as I can see, have led to the same result. As it stands, it violates no rule of law, and though not free from doubt, does substantial justice between the parties, and ought to be affirmed.