# CHARLESTON.

ALBERT WILT, Limited, v. HUFFMAN et al.

Submitted February 1, 1899—Decided April 22, 1899.

1. ATTACHMENT—*Equitable Assignment—Non-resident.*
    Where a party seeks, by bill in equity and attachment against a non-resident, to subject the profits arising from a contract existing between said non-resident and a third party carrying on business for him in this State, and it appears that said third party, in order to obtain credit from a store to enable him to run his business, agreed with the owner of said store, in the presence of said non-resident and with his consent, that the profits arising from such business should be applied to the payment of merchandise purchased from said store, such an agreement constitutes an equitable assignment of such profits, and, when paid over, cannot be reached by a creditor who garnishes said third party. (p. 478).

2. EQUITY PLEADING—*Attachment—Answer—Replication.*
    Where answers are filed to such bill in equity, making affirmative allegations, which are put in issue by no replication, such affirmative allegations must be taken to be true    (p. 476.)

3. EQUITABLE ASSIGNMENT—*Parol Contract.*
    A valid equitable assignment of a debt or other chose in action, whether evidenced by a writing or not, may be made by parol as well as by deed, and it is not important whether it be by writing or mere words.    (p. 477).

Appeal from Circuit Court, Tucker County.

Action by Albert Wilt, Limited, against Benjamin Huffman and others. Judgment for defendants, and plaintiff appeals.

*Affirmed.*

W. B. MAXWELL and H. J. WAGONER, for appellant.

CUNNINGHAM & STALLINGS, E. P. DURKIN, and A. B. PARSONS, for appellees.

ENGLISH, JUDGE:

Benjamin Huffman, a resident of the State of Pennsylvania, in 1898, was engaged in the business of cutting and delivering saw logs for the Blackwater Lumber Company,

in Tucker County. While engaged thus, he became indebt-
ed to Albert Wilt, Limited, in the sum of one hundred and
ninety-five dollars and thirty cents, to Thompson & Wilson
Company in the sum of six hundred and thirty-nine dol-
lars, to the Davis Hardware Company in the sum of three
hundred and twenty-three dollars, and to other persons in
various amounts. The Davis Furniture & Hardware Com-
pany, on the 10th of January, 1898, brought a suit before a
justice, in its name, for the use of J. M. Lashley, its gen-
eral manager, for forty-one dollars and eleven cents, part of
its demand against said Huffman, and the same day
brought suit in its own name for the balance of the claim,
(two hundred and eighty-two dollars) before the same jus-
tice, and in both suits had attachments sued out and levied
on the property of said Huffman. On January 13, 1898,
said Thompson & Wilson Company divided their claim by
assigning two hundred dollars to W. E. Weimer, two hun-
dred dollars to C. G. Blake, and retaining two hundred
and thirty-nine dollars and fifty-nine cents thereof, and
brought suit for the amounts so assigned before the same
justice, and caused attachments to be issued in each of said
suits, and levied on the property of said Huffman. On Feb-
ruary 1, 1898, Albert Wilt, Limited, filed his bill in the
circuit court of Tucker County against Benjamin Huffman,
W. S. Tolbard, Davis Hardware & Furniture Company,
and others, alleging among other things, the facts above
stated, claiming that the debts due from said creditors
were divided up to give a justice jurisdiction, seeking the
recovery of the amount due his firm, and on February 2,
1898, caused an attachment to be issued and served upon
W. S. Tolbard, as garnishee. The plaintiff also alleged in
his bill that said Huffman had a contract with the defend-
ant W. S. Tolbard, whereby Huffman was to cut and de
liver a large number of logs, which contract is in the pos-
session of Tolbard, and he prays that said Tolbard be re-
quired to produce and file the same; that said contract is
very advantageous to Huffman, and, if it could be carried
into full execution, ample profits would, in a short time,
be derived therefrom to satisfy all the creditors of Huff-
man. The plaintiff also charges that the value of horses,
camp outfit, and equipment, etc., and money, in the hands
of said Tolbard, which have been attached, are fairly of

the value of one thousand four hundred dollars, and the
aggregate of all the debts was about one thousand six hun-
dred dollars, and that, if Huffman's business could be con-
tinued in the hands of a suitable and proper person for a
short time, ample profits could be realized to satisfy all
of said debts. The plaintiff further alleged that the claims
of said Thompson & Wilson Company and said Davis
Hardware & Furniture Company were not due at the time
they sued out their attachments, and said Benjamin Huff-
man was not a resident of this State at the time he made
and incurred said debts, and therefore, under the latter
clause of section 1 of chapter 106 of our Code, they had
no right to prosecute attachments against said Huffman.
The plaintiff prays that the defendant Tolbard be required
to file the contract which he entered into with Huffman,
and also be required to fully disclose the amount he is in-
debted to the said Huffman, and to pay the same, or so
much as may be necessary to the plaintiff in satisfaction of
his debt and costs; that a special receiver be appointed to
take charge of the personal property of said Huffman, ex-
cept the money in the hands of Tolbard, including full
charge of his contract with said Tolbard, etc. The defend-
ant Tolbard demurred to the bill, and filed his answer
thereto, in which he denies that he was indebted to said
Huffman, and adopts the answer of the Thompson & Wil-
son Company with reference to the agreement between
them, Huffman and himself, and says it is true in all par-
ticulars. The Thompson & Wilson Company also demurred
to plaintiff's bill, and answered the same, in which they
allege that the attachment proceedings instituted by them
against the defendant Huffman, mentioned in plaintiff's
bill, was instituted by the manager of said company under
a misapprehension and misunderstanding of the legal ef-
fect of the agreement, in relation to its claim, between its
manager, the defendant Tolbard, and said Huffman, in
which it was distinctly agreed and understood between all
parties that Tolbard should pay all money arising from
Tolbard's contract with said Huffman to the Thompson &
Wilson Company, and Huffman gave Tolbard orders to do
so, and fully consented and agreed thereto, which was ac-
cepted by said Tolbard, all in presence of each other, and
that the said company refused to give and extend to Huff-

man credit for supplies from its store in the town of Davis until Huffman agreed that all of the money coming to him from his logging contract with Tolbard should be so paid, and not until said Tolbard agreed with it, in the manner aforesaid, that he would pay said company for Huffman all the profits and money due by him (Huffman) to said company on account of supplies furnished by the company to Huffman in carrying on his logging contract aforesaid, and Tolbard agreed he would pay all such money in his hands belonging to Huffman to said company upon its store accounts to the extent of such account; that, upon advice as to the legal effect of said contract with Tolbard, the said company and its assignees caused all said attachment suits before the justice to be dismissed, and Tolbard, before the institution of this suit and before the vacation order entered herein, paid to said company, in compliance with the agreement set forth, the sum of four hundred and fifty dollars, the amount of money due said Huffman upon said company's account against Huffman, amounting to six hundred and thirty-nine dollars and fifty-nine cents, which belonged to said company and its assignees, C. G. Blake and W. E. Weimer. The Davis Hardware & Furniture Company, by its answer, put in issue the material allegations of plaintiff's bill; claimed that the attachments sued out before the justice by J. M. Lashley and by it were regular in all respects; that its claim was not divided to give the justice jurisdiction; and also denies the allegation that its claim was not due at the time the attachment was sued out before said justice; and claims that it is entitled to priority by reason of the levying of said attachments, and the judgments thereon. To these answers the plaintiff filed no replication, either general or special, and, in consequence, the affirmative allegations of the answer must be taken as true.

Now, as to the agreement set forth in the answer of the Thompson & Wilson Company between said company, W. S. Tolbard, and Benjamin Huffman, it must be regarded as an equitable assignment of the money of said Huffman coming into the hands of Tolbard to the company in consideration of future credit, and, as the answer shows that the money was paid over to said company before the institution of this suit, and before the levy of the attach-

ment, it would not be liable to said attachment lien. Upon this point the Court held, in the case of *Kenneweg* v. *Schilansky*, 46 W. Va. 521, (31 S. E. 949), that "a verbal assignment of an open account, in consideration of future credit and merchandise sold and delivered, is a good equitable assignment, although not afterwards reduced to writing, as promised." The law is thus stated in 2 Am. & Eng. Enc. Law (2d Ed.) p. 1058: "Where there is no written obligation or evidence of debt, an oral assignment of the debt, without any delivery, either actual or symbolical, is sufficient. Moreover, a valid parol transfer of an account may be made without a delivery of a copy or transcript thereof." So, in *Risley* v. *Bank*, 83 N. Y. 318, it was held that "an assignment of an account may be made by oral agreement, without writing, or any written statement of the claim assigned, and, if founded on a valid consideration, vests in the assignee a right to proceed in his own name for the collection of the debt. So, also, an oral assignment of a portion of a debt for a valid consideration is valid." The law is stated in the case of *Rollison* v. *Hope*, 18 Tex. 446, thus: "A chose in action, not evidenced by writing or an open account, may be assigned without writing, and the assignment will pass the equitable title to the assignee. If the debtor have notice of the assignment, and promise to pay the money to the assignee, the latter may sue thereon in his own name in a court of law. In such case, the action is not brought upon the promise of the second debtor to pay the debt of the first, but upon the assignment of the claim of the first debtor against the second, and the statute of frauds is therefore inapplicable." In 2 Am. & Eng. Enc. Law (2d Ed.) p. 1056, we find the law thus stated : "Moreover, it may be stated, as a general rule, that a valid equitable assignment of a debt or other chose in action, whether evidenced by a writing or not, may be made by parol as well as by deed, and it is not important whether it be by writing or mere words,"—citing numerous authorities. The affirmative allegations of the answer in this case, not having been put in issue by replications, must be regarded as true, and, applying the law above quoted to the facts thus conceded and established, I must hold that the agreement entered into between the Thomp-

son & Wilson Company, Benjamin Huffman, and W. S. Tolbard constituted an equitable assignment of the proceeds of the contract between said Huffman and Tolbard to said company; and, the money having been paid over in pursuance of said equitable assignment before the plaintiff acquired a lien by attachment, the circuit court committed no error in its holding in reference thereto, or in dismissing plaintiff's bill; and as to the claims of the Davis Hardware & Furniture Company and its assignee, J. M. Lashley, the court properly held that their attachment liens took precedence over the plaintiff's attachment lien. The decree complained of is affirmed.

*Affirmed.*