BREWER *et al. v.* JONES.

[95 South. 519.   No. 22941.]

1. USURY. *Usurious interest may be recovered in suit by payor
against payee.*

Usurious interest, because of the express permission so to do
given by section 2678, Code 1906 (Hemingway's Code, section
2075), may be recovered by suit by the person paying it from
the person to whom it was paid.

2. LIMITATION OF ACTIONS. *Of interest on paid note payment on
principal of remaining debt and not subject to bar by limita-
tions.*

The debt due a lender by a borrower, though evidenced by sev-
eral promissory notes, is the amount of the money borrowed
plus interest thereon, and the payment of one of the notes is
a payment on the whole debt, and any interest collected by

the lender when one of the notes is paid is by operation of law a payment on the remaining notes, and is not subject to the bar of any statute of limitations.

APPEAL from chancery court of Carroll county.

HON. T. P. GUYTON, Chancellor.

Suit by Ike Jones against W. H. Brewer and others. From a decree overruling a demurrer to an original and supplemental bill and a motion to dissolve a preliminary injunction granted thereon, defendants appeal. Affirmed, and remanded, with leave to defendants to answer within thirty days after filing mandate in court below.

*Monroe McClurg,* for appellant.

Counsel for appellant holds to his first theory and submits that counsel for appellee's first impression that the five dollars overcharge was negligible, is correct. It is believed that this honorable court has but to look at the original transactions as disclosed by the notes and trust deed to find that it was not all worked out and concluded in a day and prefer a presumptive practical business reason for the inclusion of that five-dollar item which taken by itself would be dismissed as *de minimis.* 39 Cyc. 956, par. V, disposes of it in the following language: "When note bears interest from a date prior to that of its execution—The fact that an obligation for the repayment of money bears interest from a time prior to its date does not render the contract usurious on its face. Since there is a presumption in favor of the validity of the contract, it will be assumed in the absence of proof to the contrary that the circumstances attending the execution of the contract justify its form. It may well be that the note or other writing merely gives written form to a previously existing debt, and probably includes unpaid interest."

The doctrine of *in pari* does provide for favor in certain cases to the least guilty, and that depends upon the particular circumstances of each case. Confessing as the de-

murrers do, that there is usury where properly pleaded, yet the facts in this case shown by appellee's bills, often repeated, and sworn to by them, and as often heretofore argued, show appellant the least guilty violator of the law forbidding usury.

The appellees were in the wrong more deeply than Brewer because of their lack of common fairness to propose a settlement with him before suing, the bill alleges none. The bill alleges no reasonable cause of beginning the suit. See 13 C. J., page 498, cited at bottom of counsel's brief. *Rideant* v. *Mars,* 99 Miss. 199, relied upon by counsel, does not support them in the instant case. The facts are quite apart.

Like liberty, many crimes have been done in the name of "public policy." It may serve the convenience of this honorable court to examine the collation of definitions of "public policy" in 4 Words & Phrases (2 Ed. 1914), page 25. The one taken from Story on page 26, first column, and apparently most generally approved is here quoted: "Public policy is a vague expression. Story in his work on contracts says: 'It has never been defined by the courts, but has been left free of definition in the same manner as fraud. It may be safely said however, that wherever any contract conflicts with the morals of the time and contravenes any established interests, of society, it is void as being against public policy.'" Citing many authorities.

And the one at bottom of first column (page 27) is that: "It must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of "public policy" unless it clearly appear that they contravene public right or the public welfare." Citing many authorities.

There are grounds and reasons therefore, why the moral character of the parties may not be investigated in a case

like this to break the balance of *in pari* in the appellant's favor by stressing the self-confessed moral turpitude as distinguished from moral turpitude in a legal sense, by its inherent baseness, or vileness, shameful wickedness; depravity."

"Moral turpitude" is an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow man or to society in general, contrary to the accepted and customary rule of right and duty between man and man. Though the point at which an act begins to take on the color of turpitude is not very definitely marked, yet the commission of the crime of larceny whether grand or petit, undoubtedly involves "moral turpitude" as that term is commonly used. *In re Henry,* 99 Pac. 1054, 1055, 15 Idaho, 755, 21 L. R. A. (N. S.) 207; 3 Words & Phrases, page 444.

Counsel urge that the usury has never been purged at any time and the continuity of the whole matter as a single transaction. That is no answer to the defense of the positive waivers shown, or the *in pari delicto* or the base corruption shown or the all sufficient answer of no equity. Nor is counsel's statement hardly supported when they say at page 13 of their brief, "instead of retaining out of the loan some of the proceeds, Brewer was sharp enough to get this into a new note and into a separate check," etc. That comes with ill grace from Mr. Jones. The rule announced by Mr. Chief Justice SMITH in *Kimbrough* v. *Carter,* 92 So. 228, governs until a restatement is ordered.

VII. STATUTE OF LIMITATIONS. Judge W. C. McLEAN's most admirable brief in *Bank* v. *Fraser,* 63 Miss. 231, will receive the great consideration of this court, later one of its able and brilliant associates. That case was before this court at the October Term, 1885, antedating by five years the Constitution of 1890, in convention that adopted it; he was a leading member, and from twenty-seven to

twenty-nine years before the enactment of the usury laws under consideration in this case, and before a general resetting by the negotiable instruments law. Of course, the authorities cited by him are much older; much water has passed under the mill since then, as evidenced by sixty or more books reporting most of the cases tried and decided here. The progress in jurisprudence and all of the arts and sciences is beyond the limits of all imagination.

There can be no substantial difference in charging or receiving usury in one note or a series of notes. Not how, but was it done. There were three separate and distinct major transactions and contracts here evidenced by as many different securities. All discharged save the first. Even in usury the intention of the parties, good or bad, is a chief *desideratum*. If the Jones intentionally, or by fair implication, waived claim to usury by their many payments and frequent settlements they must stand to it. The record speaks against them on that question. There is abundant authority for this of which the next citation by counsel, 13 A. L. R. points out.

Counsel appeal to the "paramount law" at page 16 of their brief, merely another statement for "public policy" and cites 13 A. L. R. 1233-1244, a Michigan case. They relied chiefly on that case in the court below and to their good purpose in convincing the chancellor to overrule the demurrers. It is a fair sample of the cases cited in their brief; in fact of all cases where the relief is sought and suit begun by a really imposed upon, distressed borrower against a Shylock money lender pressing a vicious foreclosure, or a real unconscientious advantage of the weal. That case was copied from 27 R. C. L. 271, cited in our original brief, but noted here more specifically:

"Usury—Shield but not Sword. One who voluntarily pays usury interest may not maintain a suit to recover it, while one against whom a usurious contract is sought to be enforced may avail himself of the statute as a defense." 13 A. L. R. 1233. Is not that declaration of the law of

waiver as potent, powerful and commanding as any other announcement contained in the opinion? Are not the two principles one for appellant and one for appellees, *in pari arguendo?*

The consideration of the whole of all the bills discloses that the Jones' were in property and intelligence amply able to take care of themselves and not so despicably cowardly as to fear ruin or wrong if in fact and real truth Brewer had made such statement. That, too, is the only oppression for none other is set up in the bills. The appeal to the figures for a showing will not do even to help out the vagueness and indefiniteness; the bills themselves differ as to them; the first alleges the balance over is two hundred thirty-three dollars and thirty-three cents and second alleges two hundred fifty dollars. There are other minor contradictions.

They were neither afraid or oppressed when they started this litigation or they would have in some fair statement shown the reason for it; they simply thought the time had arrived to strike a long-thought-out purpose to use his money without paying the promised interest. Praying judgment as stated in the original brief, the cause is most respectfully submitted.

*J. W. Conger* and *S. E. Turner,* for appellees.

The first and third questions propounded will be handled together, reserving the discussion as to the limitation of actions to the last. Counsel has argued that the doctrine of *in pari delicto* applies to the case and cited a number of authorities. He first cited *Hope* v. *Evans,* S. & M., ch. 195, based on the illegality, made so by statute of a sale of slaves brought into this state for purpose of sale as merchandise. The constitution and statute made the sale void and the parties knew it to be so at the time, so the court held the purchaser was precluded from rescinding the sale and recovering his money. The same point exactly in *Rowan* v. *Adams, Ib.*

The next case he cited is *Wooten* v. *Miller,* 7 S. & M. 380, which was another slavery case and was on the question whether Miller in North Carolina could recover the price of a slave sold by his agent, Wooten, in Mississippi, as merchandise, from another state, the court held again, that the contract being void from the beginning, and Miller knew it to be void, that Miller could not recover from his agent.

The next case cited by appellant is *Hoover* v. *Pierce,* 26 Miss. 627, and we will copy part of that decision: "It has been definitely settled by this court that all obligations and contracts made to secure the price of slaves brought into this state and sold in violation of the second section of the seventh article of the Constitution in regard to slaves may be avoided upon the plea of the defendant. But whilst this is held by the court, it will not lend its aid to a party who seeks to recover back money which has been, in fact, paid upon an illegal consideration, upon the maxim that, *'in pari delicto portior est conditio defenditis.'* The only exception to this rule recognized by the English decisions exists in that class of cases in which one of the parties has, by an illegal act, taken advantage of and oppressed the other. The exception and the reason upon which it is founded is clearly stated by Lord MANSFIELD in *Browning* v. *Morris.* His lordship said that where certain acts are made unlawful by statute, in order to protect unwary and ignorant people from oppression and extortion, then although both parties are guilty of violating the law, yet they are not equally guilty and that in such cases the party from whom the money has been exacted shall recover it back from the party who practiced the oppression. The cases put in illustration of the rule are, where under a usurious contract, a party has received a greater amount of interest than is allowed by the statute." Counsel in copying from this case did not go quite far enough.

The next case he cites is *Deans* v. *McLendon,* 30 Miss. 343, which was nothing more than an announcement that

"no action can be maintained upon a contract, the consideration of which is either immoral in itself or prohibited by law, or which is made in contravention of public policy, or which grows out of an illegal or immoral act," and was a case of the transportation of slaves as merchandise. He then takes up *Browdre, Admr.* v. *Carter,* 64 Miss. 321, which was tried upon a statute that made every contract, deed of trust, note, etc., void, if the lender of the money had not paid the privilege tax, being a merchant, and the court held, as in all cases dealt with on statutes making the contract void *ab initio,* that the contract being void at the outset, there was no contract at all, and the deed of trust was uninforceable.

These cases cited by counsel do not touch the question here. The quotations from the Bowdre case in appellant's brief, are merely a distinguishing by the court between that case and the case of *Dean* v. *Robertson.* The *Robertson case,* 1 So. 159, 64 Miss. 195, merely re-affirmed that all contracts were made void under the section of the code unless a privilege tax was paid under said section, and added that bills in equity must offer to pay,—which was done in the case at bar.

Counsel then cites *Hamblett* v. *Harrison,* 80 Miss. 118 (31 So. 580), and he sums up that case in these words: "Cannot obscure fraud." The same is not in point. The case simply imputed to the wife knowledge of the husband's fraud in procuring a piece of land and she was estopped to hold it under his deed. That has nothing to do with this case. He then cites *Cooper* v. *Rivers, Sheriff,* 95 Miss. 423, and says that this case means, "applies to third guilty parties." This case was simply a suit to recover from the sheriff money deposited in lieu of bond and with the understanding that the prisoner should escape and the court held that the money being paid to induce the sheriff to commit a crime—to let prisoner escape—the parties were *in pari delicto* of course.

Counsel's *Bellew* v. *Williams case,* 109 Miss. 74, 67 So. 849, was a connivance and an agreement between the parties to use a different rule of log measurement. The statute made it a misdemeanor to use any other rule, and the court held that they had conspired to commit a misdemeanor and left them where they were. It will be noted in deciding this case the court cited the following authorities as guides and as *stare decisis,*—51 Miss. 196, a liquor contract; 71 Miss. 523, and 85 Miss. 186.

Counsel's next case is *Purvis* v. *Woodward,* 78 Miss. 929 (29 So. 917), and it has no bearing whatever on the points made by the demurrer. Judge WHITFIELD in deciding the above case, relied on with approval, *Association* v. *Toney,* 29 So. 825, 78 Miss. 916, and *Parchman* v. *McKinney,* 12 S. & M. 631, to sustain him.

This is not a suit to recover in money the amount of usury paid but is a suit in equity to stop a sale of lands under a trust deed and have applied all interest paid on a series of notes and all penalties and forfeitures allowed by law, to the reduction of and the extinguishment of the balance of principal.

The last Mississippi case cited by counsel is *Lowenberg* v. *Klein,* 87 So. 653 (— Miss. —). Another intoxicating liquor case, in which one bought one thousand five hundred dollars worth of whisky and gave his cashier's check for it, and never did get the whisky, so the maker of the check enjoined its collection, on account of it arising out of a void transaction. The court left them where they were.

Usury consists of—1. A loan of money or forbearance or money, express or implied; 2. Upon the understanding that the principal shall be, or may be, returned; 3. And that for such loan or forbearance a greater rate of interest than is authorized by law shall be paid, or agreed to be paid; 4. Entered into with an intention to evade the law. *Planters Nat'l Bank* v. *Wysong,* 12 A. L. R. 1412, 27 R. C. L. 208.

"Since the penalties of the usury laws are all directed against the lender and intended for the protection of the borrower, contracts shown to be usurious are construed strongly against the lender."—39 Cyc. 918 (s). Not void because prohibited:—"While usury statutes usually prohibit the making of contracts of loans or forbearance at a higher rate than specified as legal, they also provide specific penalties and forfeitures for violation of them, which precluded the implication that the legislature intended contracts in violation of such statutes to be void." 39 Cyc. 911 (c), et seq., 63 Miss. 235; 7 How. 508; 1 How. 596; 67 Miss. 146 (6 So. 627). Agreement for usury does not make them *in pari delicto.* 67 Miss. 146, 4 How. (Miss.) 573.

### IN PARI DELICTO. PUBLIC POLICY.

Counsel for appellants contend and attempt to show by quoting certain parts of the original bill, amended bill and bill of injunction that the parties to this suit are *in pari delicto.* The bills taken as a whole or separately on close scrutiny charge the defendants (appellants here) with the unlawful intent to not only charge usury, but to coerce bonus or hush money.

On this point we cite the case of *Rideout* v. *Mars,* 99 Miss. 199, 54 So. 801. Also where the parties are not on equal footing, as where advantage is taken by one party over the other as in this case, see *Block* v. *McMurry,* 56 Miss. 217. We would not be heard to say for a moment that the law of the state will not recognize an interest charge as usurious unless it be knowingly paid and knowingly received with an intent in both parties to avoid the statute, for the reason that the courts of the state have already said in *Ford* v. *Vicksburg Waterworks Co.,* — Miss. —, 59 So. 880, that there are two classes of usury, viz: "First, where parties contract for a rate of interest in excess of that allowed by law; and second, where the cred-

itor receives a greater rate of interest than allowed by law."

Begin with *Planters' Bank* v. *Snodgrass,* 4 How, 573: Syllabus: "To constitute usury, there must be an agreement between the lender and the borrower of money, by which the borrower knowingly gives or promises, and the lender knowingly takes or reserves, a higher rate or interest than the law allows, and with an intention to violate the statute." Then, the court cited case after case of the United States, supreme court and others, and of the English courts, and said: "The principle, which grows out of all these cases I take it to be that stated by Gould, J., in *Murry* v. *Harding,* 'that the ground and foundation of all usurious contracts is the corrupt agreement.'"

In *Smythe* v. *Allen,* 67 Miss. 150, 6 So. 627), the court quotes with approval the Snodgrass decision, quoting from it, which case has already been brought to the attention of the court. The unlawful intent—"To constitute usury, there must be an intent to violate the statute, 39 Cyc. 919. (2). "To constitute usury within the provisions of the law—there must be an intention knowingly to contract for or to take usurious interest; for, if neither party intend it, but act *bona-fide* and innocently, the law will not infer a corrupt agreement." *United States* v. *Waggoner,* 9 Law Edition, 163; *Planters' Bank* v. *Snodgrass,* 4 Howard (Miss.) 573.

"The test is, will the contract, if performed, result in providing for the lender a greater rate of interest than allowed by law, and was that result intended? *Smith* v. *Parsons,* 57 N. W. 311, 10 S. & M. 89. "A violation of the usury laws is not a criminal offense unless expressly so declared." 39 Cyc. 1095; *Wallace* v. *Fouche,* 27 Miss. 266. "And the taking of usurious interest at any time after a loan is made, in consideration of an extension of time, constitutes the offense." Ib.

The law has already applied these usurious payments to the extinguishment of principal, and he cannot collect

them. There are two classes of usury—1. Where usurious interest is actually received; 2. Where the parties agree on usurious interest. — Miss. — (59 So. 880).

Does the three-year statute of limitations affect the usurious payments in this case? No. There is an unbroken line of decisions along a well-settled principle in this state on the point above mentioned. In the case of *Union National Bank* v. *Fraser,* 63 Miss. 231, Hon. W. C. McLEAN was of counsel and he said in his brief: "There are three separate and distinct reasons why the usurious interest paid . . . should be deducted from the note: (1) The note sued on is not a separate and independent transaction, but is one of a series of connected transactions; (2) The rule is undoubted that when a party makes a payment, though expressly agreed at the time that the same shall be applied in settlement of the illegal interest, yet the law will apply it as a payment upon the principal: (3) but granting for the sake of argument that the contract for the said several years is not executing but executed, yet we maintain that the decree is correct. Under this head, the question is whether one who has paid usurious interest can recover back all of the interest paid or only the excess over the lawful interest, arises." He cited *Polkinhorne* v. *Hendricks,* 61 Miss. 366; *Bend* v. *Jones,* 58 Miss. 368; *Chaffe* v. *Wilson,* 59 Miss. 15; *Mattock* v. *Cobb,* 62 Miss. 43.

Paramount public interest is highly involved in this view, as well as on the point just disposed of, being that of *in pari delicto.* 54 So. 801. Passing again to the question of the statute of limitations, we cite the following recent and nationally recognized authority confirming our own court in the proposition that all usurious payments are applied by the law then and there when paid and that no statute of limitations ever bars them, to-wit: The Michigan supreme court, in *Gladwin State Bank* v. *Dow,* 180 N. W. 601, cited and annotated in 13 A. L. R. 1233-1244.

That taint of usury follows all of the descendants of obligations. 13 A. L. R. 1217; and 10 Smedes and Marshall, 89.

There is a marked distinction between those cases where the law imposes an obligation to return money and where the law actually credits money, as in the case of *Buntyn,* 86 Miss. 454, 38 So. 345, and the Musgrove case cited in the Buntyn case, and those cases where the law itself credits usurious payments of interest on the principal, as of the time of payment, the payments in such case being made according to an agreement to pay and being made by a debtor to a creditor.

Summing up: All questions he has asked are properly answered in the negative, in this wise: The appellees are not estopped, nor are they *in pari delicto,* because there is a clear differentiation between the cases in which parties may be *in pari delicto* and the cases growing out of a violation of the usury laws, which were, in the first place, enacted for the peculiar benefit of borrowers, in view of public policy, and for the other reason the appellees, as shown by the bills were in a position to do nothing more than obey the behests of their creditor or be foreclosed and lose what they had at sacrifice sales, and they did his bidding.

The statute of limitations does not apply because the over-payments as usury and blood money, if you please, called in the bills "hush money" have already been applied by the law of the land to the extinguishment of principal, regardless of any agreement of the parties that it should be applied to usurious interest—and the statute never runs against a payment. A payment is a payment, whether the parties made it or the law made it.

With these observations, if the court please, we close our answer to the brief of the appellant, and pray that the cause may be affirmed and remanded to the chancery court for further proceedings.

SMITH, C. J., delivered the opinion of the court.

This is an appeal to settle the principles of the case, from a decree overruling a demurrer to an original and amended or supplemental bill, and a motion to dissolve a preliminary injunction which had been granted thereon.

The bill alleges that the complainant, Jones, borrowed the sum of four thousand five hundred dollars from the defendant, Brewer, on February 25, 1914, and executed his ten promissory notes therefor, each being for the sum of four hundred fifty dollars, plus eight per cent. interest on the debt due; that is to say, the first note included eight per cent. interest on the four thousand five hundred dollars to January 1, 1915, the second note included interest on four thousand fifty dollars from January 1, 1915, to January 1, 1916, and so on through the series. Several of these notes were paid after their maturity but before the filing of the bill and the complaint therein is that Brewer coerced Jones into paying him money in excess of the face of these notes and interest thereon by threatening to foreclose the deed of trust, which payments the complainant contends constitute usurious interest on the notes and are sufficient to liquidate the notes which had not matured when the bill was filed. After the filing of the original bill, Brewer, in accordance with a provision to that effect in the deed of trust declared the whole debt due and was proceeding to collect it by foreclosure, in accordance with the terms of the deed of trust, when the amended or supplemental bill was filed and injunction granted restraining the foreclosure. The bill prays for an account, and complainant offered therein to pay any amount that may be found due by him to Brewer. The alleged payments of usurious interest seems to have been made more than three years before the filing of the bill of complaint.

The grounds on which the appellant seeks to sustain his demurrer and motion to dissolve may be reduced to two: First, it affirmatively appears from the bill that the complainant entered into a corrupt agreement with the de-

fendant to violate the state's laws against usury, and therefore is not entitled to any relief in the courts; second, the recovery by the complainant of the alleged usurious payments is barred by the three-year statute of limitations.

It is true that both the borrower and the lender violate the law in contracting for, paying and receiving usurious interest, but that fact does not bar the borrower from recovering such interest by suit against the lender, for the prohibition against usurious interest is not only for the protection of the person paying it, but the right to recover it by suit is expressly given to him by section 2678, Code of 1906 (Hemingway's Code, section 2075).

Though evidenced by several promissory notes, the debt due by Jones to Brewer, as long as all of the notes remain in Brewer's hands, was the four thousand five hundred dollars borrowed, with interest thereon, and the payment by Jones of any one of the notes was therefore necessarily a payment on the whole debt. Consequently no question of these alleged payments of usurious interest by Jones being barred by any statute of limitations can arise, for all such payments were by operation of law payments on the balance of the debt due from Jones to Brewer, and against payments no statute of limitations runs. *Polkinghorne* v. *Hendricks,* 61 Miss. 366; *Union National Bank* v. *Fraser,* 63 Miss. 231.

We must not be understood as intimating that these payments would be barred in event they were a mere set-off against the notes which Brewer now seeks to collect. We leave that question unaffected hereby.

Affirmed and remanded, with leave to the appellant to answer within thirty days after the filing of the mandate in the court below.

*Affirmed and remanded.*