ANDREW RUFUS COOK, *Trustee*

*v.*

EASTERN GAS AND FUEL ASSOCIATES

(No. 9773)

Submitted April 23, 1946.   Decided June 18, 1946.

*Scherer, Bowers & File,* for plaintiff in error.

*A. D. Preston,* for defendant in error.

HAYMOND, JUDGE:

On this writ of error the defendant, Eastern Gas and Fuel Associates, seeks reversal of the judgment of the Circuit Court of Raleigh County, rendered July 26, 1945, against it in favor of the plaintiff, Andrew Rufus Cook, Trustee, for $3,000.00, with interest and costs.

The action is in assumpsit and the claim of the plaintiff, as stated in his declaration, is for the principal sum of $2,557.41, with interest, for royalty alleged to be due and owing to the plaintiff from the defendant, under a deed of lease upon a tract of coal in Fayette County, West Virginia. The lease, dated November 1, 1912, was made by Harvey Cook and wife, and T. K. Laing and wife, as lessors, to Long Branch Coal Company, a corporation, as lessee. The claim consists of two items, one of $2,115.56, payable January 20, 1942, for coal mined during the fourth quarter of 1941, and the other of $1,527.96, payable April 20, 1942, for coal mined during the first quarter of 1942. These items aggregate $3,643.52, subject to a payment of $1,086.11, made by the defendant on May 13, 1942, which reduced the claim to the principal amount sued for of $2,557.41.

Suit was instituted in the Circuit Court of Raleigh County on June 1,.1944, and the declaration and the accompanying itemized statement of account were filed at July rules, 1944. The defendant, by its attorney, accepted service of process on June 2, 1944, and, on October 2,

1944, appeared in open court and filed its special plea of payment. The plea alleges that before the commencement of the action the defendant, prior to January 20, 1942, paid to the lessor, Harvey Cook, the assignor of the plaintiff, the principal amount of $2,557.41; that after November 1, 1912, the date of the lease, the defendant, by various transfers and assignments, succeeded to all the rights and all the liabilities of the original lessee, Long Branch Coal Company; that during the period 1926 to 1933 that company mined, by mistake, from nearby coal owned by Kingston-Pocahontas Coal Company, a corporation, 42,097.32 tons of coal, the exact amount on which the plaintiff claims royalty is due and owing under the lease, and paid, also by mistake, royalty to Harvey Cook, in the amount of $2,557.41; that during the latter part of the year 1941, or the early part of the year 1942, the defendant first discovered the error, and on May 13, 1942, deducted the amount of the payment of $2,557.41, so made, from the royalty of $3,643.53, for the fourth quarter of 1941 and the first quarter of 1942, and paid to the plaintiff the balance of such royalty of $1,086.11; that no interest was due on the claim of the plaintiff; and that his claim for $2,557.41 has been fully paid.

To the plea of payment the plaintiff filed three special replications. The first two replications respectively set up the statute of limitations of five years and the statute of limitations of ten years as defenses to the payment alleged in the plea. The third replication charged that the payment to Harvey Cook during the years 1926 to 1933, was made by Long Branch Coal Company, and that there is no assignment, from that company to the defendant, of any claim on account of such payment. By its rejoinder to the third replication, the defendant denied and put in issue the allegations of the replication, and averred that, though payment was made to Harvey Cook by Long Branch Coal Company, the defendant is its successor in title, and that by various transfers and assignments and proper corporate action, all claims and rights

of that company were assigned to and vested in the defendant.

The defendant also filed an equitable plea on February 21, 1945, in which it incorporated substantially the same allegations that are set forth in its plea of payment, and additional averments that Harvey Cook had accepted and retained the payment of the sum of $2,557.41 erroneously made to him during the years 1926 to 1933; that the defendant had been required to pay, and did pay, to Kingston-Pocahontas Coal Company the royalty for the coal of that company mined by mistake from its lands; and that the payment of the balance of $1,086.11 made to the plaintiff by the defendant on May 13, 1942, constituted settlement and payment of the claim of the plaintiff. To this plea the plaintiff filed his special replication by which he denied the right of the defendant to assert against him any right or claim of Long Branch Coal Company by reason of any assignment and that any settlement of his claim had been made between him and the defendant. The special replication also set up the statutes of limitations in defense of the payment asserted in the equitable plea.

No demurrer was interposed by either party to any of the pleadings filed by the other, and issue was joined between them upon the declaration, the pleas, the replications and the rejoinders. The case, by agreement of the parties, was tried by the court in lieu of a jury, and on July 26, 1945, the court entered the judgment which the defendant assails in this Court.

On November 1, 1912, Harvey Cook and wife, and T. K. Laing and wife, leased to Long Branch Coal Company, a corporation, the coal underlying a tract of 193.4 acres of land in Fayette County, West Virginia. The lease was for the term of twenty years, or as long thereafter as may be necessary to mine and remove the workable coal. Cook owned an undivided three-fourths interest, and Laing an undivided one-fourth interest, in the leased property, and the royalty at the rate of eight cents per

ton, together with an additional one dollar for each one thousand tons mined, was payable, in the ratio of three-fourths to Cook and one-fourth to Laing, in quarterly installments on the twentieth day of the month following the expiration of each quarter. The lease contained a covenant against its assignment without the prior written consent of the lessors. It also contained other terms and agreements which are not material to the decision of this controversy.

In 1923 Laing and wife conveyed his one-fourth interest in the leased premises to Long Branch Coal Company. That company, as lessee in the original lease, operated the property until December 31, 1926. By deed dated December 24, 1926, it conveyed all its assets and property to C. C. B. Smokeless Coal Company, a Massachusetts corporation, except certain leases, among which was the original lease from Cook and Laing, to the assignment of which the consent of the lessor Cook had not then been obtained. Long Branch Coal Company was not dissolved until after November 21, 1933, but was continued in existence until the consent to its transfer of the lease had been obtained from Cook. From December 31, 1926, to November 21, 1933, when Harvey Cook consented to the assignment of the lease by Long Branch Coal Company and joined in a supplemental lease to C. C. B. Smokeless Coal Company, a Delaware corporation, C. C. B. Smokeless Coal Company, a Massachusetts corporation, appears to have operated the property under the lease and paid the royalty in the name of Long Branch Coal Company for the coal mined, for the reason that the lease had not been assigned to it.

On December 1, 1933, C. C. B. Smokeless Coal Company, a Massachusetts corporation, transferred and assigned all its assets to C. C. B. Smokeless Coal Company, a Delaware corporation, which, by appropriate legal and corporate action, changed its name, in July, 1934, to Koppers Coal and Transportation Company. This company subsequently, in 1936, consolidated with other companies

into a corporation known as Koppers Coal Company. By a deed of assignment, dated October 15, 1941, to which Harvey Cook consented and in which he joined as a party, and by a later assignment dated December 31, 1941, Koppers Coal Company conveyed and assigned all its property and assets, including the lease, to the defendant. By deed dated December 15, 1941, Harvey Cook conveyed his undivided interest in the coal and the lease to the plaintiff, Andrew Rufus Cook, as trustee for designated members of his family as beneficiaries. The deed required the trustee to apply the money collected by him under the trust to the care and the maintenance of the grantor during his lifetime and to the payment of his funeral and burial expenses. It also reserved to Harvey Cook the right to collect the royalty under the lease for the last quarter of 1941. Later, by a writing dated February 23, 1942, he assigned his claim to that royalty, amounting to $2,115.45, with interest, to the plaintiff, as trustee.

The lease is still in effect, the leased property is being operated by the defendant, and the current royalty is being paid by it to the plaintiff.

During the years 1926 to 1933 there was mined by mistake, from the adjoining lands of Kingston-Pocahontas Coal Company, coal located outside the area covered by the lease. This error was due to the uncertain location of a line known as the Gallego boundary line between the two tracts of coal. C. C. B. Smokeless Coal Company, a Massachusetts corporation, by drafts issued in the name of Long Branch Coal Company, paid to Harvey Cook, for the coal mined by mistake from the Kingston-Pocahontas Coal Company land, the sum of $2,557.41. It is not disputed that this money was so paid to Harvey Cook, by mistake, before he transferred the leased property and his claim to the royalty under the lease to the plaintiff or that this sum of money was retained by him; and it is not contended that any part of it was ever re-

paid. It also clearly appears that the claim for the payment of $2,557.41 passed by various mesne assignments to the defendant. In May, 1942, the payment having been previously discovered by the defendant, it deducted the amount of the payment of $2,557.41 from the amount of royalty of $3,643.52, which had accrued for the last quarter of 1941 and the first quarter of 1942, and sent its check for the difference of $1,086.11 to the plaintiff, who received, and still retains, the proceeds of the check.

The evidence is conflicting on the issue whether the acceptance of the payment of $1,086.11 by the plaintiff resulted in a settlement of his claim for the balance of the royalty and of the claim of the defendant to credit for the payment. The testimony in behalf of the plaintiff is in denial of the settlement contended for by the defendant; that offered by the defendant indicates that it made the payment of $1,086.11 on the basis of a settlement of the claim of the plaintiff. The question of settlement, however, is not controlling in the decision of this case.

To sustain its single assignment that the trial court erred in entering judgment in favor of the plaintiff, the defendant, in substance, contends: (1) That as assignee of the claim of payment of $2,557.41 made by Long Branch Coal Company, it is entitled to credit in that amount, as a payment, against the demand of the plaintiff for $2,557.41; and (2) that the statutes of limitations, set up in the replications of the plaintiff, are not available to him against the defense that the claim of the plaintiff has been paid in full by the remote assignor of the defendant to its benefit and relief.

These contentions will be discussed and disposed of in inverse order to that in which they are stated.

Statutes of limitations operate to destroy and defeat the remedy by which a debt may be recovered. They do not operate, in law or in fact, to discharge or extinguish a debt. *Roots* v. *Mason City Salt and Mining Co.*, 27 W.

Va. 483; *Ramey* v. *Ramey*, 181 Va. 377, 25 S. E. 2d 264. Though an action to recover a debt may be barred by limitations, the debt is not extinguished. Statutes of limitations act only on remedies and do not extinguish rights. *Martin* v. *Mayer*, 63 Ga. App. 387, 11 S. E. 2d 218. They do not apply to a plea in bar alleging payment. 37 C. J. 804. By its plea of payment, in this case, the defendant does not seek any affirmative relief or any recovery from the plaintiff. Against payment no statute of limitations runs. *Brewer* v. *Jones*, 131 Miss. 545, 95 S. 519. The purpose of statutes of limitations is to bar actions and not to suppress or deny matters of defense. The general rule is that such statutes are not applicable to defenses but are applicable only where affirmative relief is sought. 34 Am. Jur., Limitation of Actions, Section 63. The plea in this action is defensive only. It alleges the payment, by a remote assignor, of the amount of the claim of the plaintiff for the purpose of barring a recovery by the plaintiff from the defendant. In this respect, the plea of payment, filed by the defendant, being wholly defensive, differs from a plea of set-off by which a defendant seeks a recovery from a plaintiff. The holding of this Court in *Walker* v. *Burgess*, 44 W. Va. 399, 30 S. E. 99, that the assignee of a note, suing upon it, may plead the statute of limitations against a set-off based upon a demand against his assignor, has no application to the plea of payment in this case. For the same reason, the five year and the ten year statutes of limitations, set up in the special replication of the plaintiff to the equitable plea of the defendant, are not available to the plaintiff against the defense alleged in that plea.

It is clear, from the evidence, that the payment by Long Branch Coal Company, the remote assignor of the defendant, of $2,557.41, to Harvey Cook, one of the lessors in the original lease, during the period 1926 to 1933, was made under a mistake of fact. In paying that sum of money, the representatives of that company entertained the mistaken belief that the 42,097.32 tons, mined from the adjoining land of Kingston-Pocahontas Coal

Company, had been removed by it from the coal owned by Cook; and that error brought about the payment to Cook of the royalty of $2,557.41. It is equally clear that he accepted the payment of that sum in good faith and in the honest belief that it was made to him for his coal. He was not, however, in fact or in law, entitled to the payment which, because of the mistake, he accepted and has since retained. By the payment, under the existing mistake of fact, Long Branch Coal Company became a creditor of Cook, and he became a debtor to it, for the amount of the payment. This gave rise to a credit or an account in favor of that company against him. One who pays money under a mistake of fact to another who is not entitled to receive or retain it may recover it in an action of assumpsit. *Shinn* v. *Shinn*, 78 W. Va. 44, 88 S. E. 610. Unquestionably Long Branch Coal Company could have recovered this payment from Harvey Cook until by delay its right to maintain an action for that purpose should come within the bar of the applicable statute of limitations. Whether that claim was barred prior to the institution of this action need not be decided. That question depends upon the status of the accounts among the parties to the various assignments and that phase of the case is not completely presented or developed in the evidence. If, however, the right of action is barred by the statutes of limitations, the claim itself is not extinguished or discharged. It continues to exist even though the remedy of an action to enforce its collection be no longer available. The claim constitutes an account, a chose in action; and so long as it belonged to Long Branch Coal Company, it was one of its assets and property rights. An account, under the statute, Code, 55-8-9, which authorizes the assignee of any bond, note, account, or writing, not negotiable, or other chose in action arising out of a contract or injury to personal or real property, to maintain any action in his own name without the addition of "assignee" which the original obligee, promisee, payee, contracting party, or owner of such chose in action, might have brought, means a demand arising upon the contract,

express or implied. *Barkers Creek Coal Co.* v. *Alpha-Pocahontas Coal Co.*, 96 W. Va. 700, 123 S. E. 803.

An account, being a chose in action, is assignable, and the assignment passes the equitable title to the thing assigned to the assignee, who, by virtue of the statute, may sue at law in his own name. *Young* v. *Garred*, 90 W. Va. 767, 112 S. E. 181; *Watkins v. Angotti*, 65 W. Va. 193, 63 S. E. 969; *Wallace v. Leroy*, 57 W. Va. 263, 50 S. E. 243; *Wilt* v. *Huffman*, 46 W. Va. 473, 33 S. E. 279; *Kenneweg* v. *Schilansky*, 45 W. Va. 521, 31 S. E. 949; *Bentley* v. *Standard Fire Insurance Co.*, 40 W. Va. 729, 23 S. E. 584. The assignee steps into the shoes of the assignor and takes the assignment subject to all prior equities between previous parties. His situation is no better than that of the assignor. *Thomas* v. *Linn*, 40 W. Va. 122, 20 S. E. 878.

All common law rights of action may be assigned which, upon the death of the party, would pass to his legal representative. *McClaren v. Anderson*, 110 W. Va. 380, 158 S. E. 379. A right of action against a common carrier for injury to goods while in course of transportation is assignable. *Williamsport Hardwood Lumber Company* v. *Baltimore & Ohio Railroad Co.*, 71 W. Va. 741, 77 S. E. 333. A cause of action for fraud and deceit by the grantor respecting the acreage in the sale and conveyance of land is assignable. *Miller v. Starcher*, 86 W. Va. 90, 102 S. E. 809.

In the case of *Hartman* v. *Corpening*, 116 W. Va. 31, 178 S. E. 430, this Court held that a chose in action may be validly assigned, and that a prior assignment, by a judgment debtor, of a claim owed to him by another, constituted a good defense in a suggestion proceeding by the judgment creditor of the assignor upon an execution issued on the judgment against the assignor after the assignment. In *Bank* v. *Gettinger*, 3 W. Va. 309, it was held that a voluntary assignment of a debt passes the debt to the assignee at the time of the assignment so as to defeat a subsequent attaching creditor of the as-

signor. See *Wilt* v. *Huffman*, 46 W. Va. 473, 33 S. E. 279. Defenses which the assignor might have set up to a set-off or a counter claim against him are available to his assignee; and matter in avoidance of a plea in bar by the debtor, which would have been available to the assignor, may be pleaded by his assignee. 5 C. J. 952.

In *Walker* v. *Burgess*, 44 W. Va. 399, 30 S. E. 99, in which it was held that an assignee of a note, suing upon it, was entitled to plead the statute of limitations against a set-off based upon a demand against the assignor, this Court uses this language in recognizing such defense by the assignee: "The law gives the assignee right to use the name of the assignor, whether the latter is willing or not, in a suit to recover the debt, and so it ought to allow the assignee the use of any defense against a claim which would destroy the assignee's property in the note assigned." These words apply with peculiar force to the right of the defendant, assignee, to set up, in this action, the account of its remote assignor, because of its payment by mistake to Harvey Cook before his assignment to the plaintiff, as a payment of the claim of the plaintiff. Denial in this case of the right so to defend would result .in destruction of the property of the assignee in the assigned account. It is well settled that, as a general rule, the assignee of a chose in action acquires with it all the rights and all the remedies possessed by his assignor in the subject of the assignment. 4 Am. Jur., Assignments, Section 115. Whatever is necessary to make the assignment effectual will pass as an incident of the thing assigned. 6 C. J. S., Assignments, Section 85; 5 C. J. 949.

Ordinarily the assignee acquires no greater right than that possessed by his assignor, and he stands in his shoes. *Thomas* v. *Linn*, 40 W. Va. 122, 20 S. E. 878. Normally the assignee takes subject to all the defenses and all the equities which could have been set up against the property in the hands of the assignor at the time of the assignment. 4 Am. Jur., Assignments, Section 94. *Horner-Gaylord Co.* v. *Fawcett*, 50 W. Va. 487, 40 S. E. 564. Here

no intervening defenses or equities arise against any of the intermediate assignors in the succession of assignments from Long Branch Coal Company, a remote assignor, to the defendant, a remote assignee.

It is clearly established by the evidence that Harvey Cook, before he transferred his interest in the leased coal to the plaintiff, was paid the royalty upon the same quantity of coal for which the plaintiff, his assignee, seeks to recover in this action, and that the claim or the account against him for payment of that amount, to which he was not entitled when the payment was made, passed, by mesne assignments, from Long Branch Coal Company to the defendant, its remote assignee. The various assignments in writing are full and comprehensive; together they embrace and pass, to each of the successive intermediate assignees, the claim or the account of the original assignor. The account, in this case, is free of any equities or defenses in favor of Harvey Cook, or his assignee, against any of the assignors of the defendant.

Under the principles stated in the cited cases, the defendant has the right to plead, and to make use of, the account, which it acquired from its remote assignor, as a payment of the claim of the plaintiff, who, as the assignee of Harvey Cook, is subject to the equities and the defenses which the defendant, as the holder of the account, is entitled to set up against the assignor of the plaintiff. The defense of payment, alleged in the plea of the defendant and established by the evidence, is a complete bar to the claim of the plaintiff.

The payment to Harvey Cook, by Long Branch Coal Company, under mistake of fact, of $2,557.41, may also be treated as an overpayment in that amount upon a running account between Cook and Long Branch Coal Company which continued between him and his assignee, the plaintiff, and each of the successors of that company by virtue of the various assignments. That overpayment constituted a credit balance in favor of the lessee in the lease, the benefit of which passed by assignment to each

successive assignee and existed in its favor, until it was applied upon the continuing account by the defendant on May 13, 1942, when it made use of the credit balance of $2,557.41 on the accrued royalty of $3,643.52 and paid the residue of $1,086.11 to the plaintiff, in full satisfaction of the continuing account.

The application of the foregoing principles to the facts in this case gives effect to the law of assignments and operates to prevent the injustice which would necessarily result if the defendant were required to pay a claim which has once been paid and which, for that reason, has been completely satisfied and discharged.

The evidence upon the issues raised by the plea of payment is not disputed, and the trial court incorrectly applied the law to the facts in the case. The judgment of the Circuit Court of Raleigh County is reversed and set aside, and this case is remanded to that court for further proceedings in accordance with the views expressed and the principles stated in this opinion.

*Judgment reversed;*
*case remanded.*