State *ex rel.* G. Thomas Battle,
State Tax Commissioner

*v.*

Frank J. Demkovich, *et al.*, d/b/a
Midstate Equipment and Erectors

(No. 12303)

Submitted May 26, 1964.        Decided June 23, 1964.

*C. Donald Robertson, Attorney General, J. Patrick Bower,* Assistant Attorney General, for appellant.

*James W. Pyles,* for appellees.

CAPLAN, JUDGE:

This is a civil action instituted on February 6, 1962, in the Circuit Court of Tyler County by the State of West Virginia at the relation of G. Thomas Battle, State Tax Commissioner, plaintiff, against Frank J. Demkovich and Jerome A. Carroll, doing business as Midstate Equipment and Erectors, defendants, wherein the plaintiff seeks to recover from the defendants the sum of $4,498.91, which represents business and occupation tax and penalties owing to the state for the years 1954, 1955 and 1956.

Upon the failure of the defendants to pay their business and occupation tax for the years 1954 and 1955, the State Tax Commissioner, on February 19, 1957, issued an assessment in the amount of $5,389.81. A dispute arose as to the amount of the assessment and after an agreement had been reached between the parties a new assessment was issued in a reduced amount. The new assessment was contained in a letter dated June 28, 1957, from the State Tax Commissioner to the defendants, wherein it was stated, in accordance with the agreement, that the tax for 1956 was to be paid immediately and that the tax for 1954 and 1955 was to be paid in full in twelve equal monthly installments.

By a letter dated July 1, 1957, addressed to the State Tax Commissioner, counsel for one of the defendants acknowledged that the tax commissioner's letter of June 28, 1957, correctly stated the agreement concerning the payment of the aforesaid taxes and further related that one of the partners, Mr. Carrol, had accepted all the provisions of the agreement.

Defendant Carroll replied to the tax commissioner's letter on July 12, 1957. In this letter Mr. Carroll set forth the details of the settlement and stated that the partnership would pay the 1954 and 1955 taxes during the next year, in accordance with the agreement. The business and occupation tax return for the year ending December 31, 1956, was received on July 16, 1957. The returns for 1954 and 1955 were submitted but it is not clear from the record the exact date on which they were received

in the tax commissioner's office. It is agreed that such returns were filed prior to the institution of this action.

Subsequent to the institution of this action, and after certain pleadings were filed, the plaintiff was served with a notice of motion for summary judgment, pursuant to Rule 56 of the West Virginia Rules of Civil Procedure. After a hearing on November 20, 1962, the defendants' motion for a summary judgment was overruled. At this hearing it was determined that no genuine issue of fact existed between the parties and it was agreed that no further need existed for a pre-trial conference or for a trial. Thereafter, on March 15, 1963, judgment was entered for the plaintiff in the amount claimed.

On March 22, 1963, the plaintiff was served with a motion to set aside the judgment and a motion for summary judgment. No notice as to the time or place of any hearing on said motions was received by the plaintiff. However, on May 29, 1963, the trial court entered an order setting aside the judgment previously awarded the plaintiff.

The plaintiff claims that the court below erred in holding that the business and occupation tax for the years 1954, 1955 and 1956 had been barred by the statute of limitations. The plaintiff further says that it was error for the court to enter the final order of May 29, 1963, which set aside the judgment for the plaintiff, as the plaintiff was given no opportunity to be heard on the defendants' motion.

It is the position of the defendants that the statute of limitations, and the manner for the extension thereof, as contained in Code, 1931, 55-2-19a, as amended, preclude the collection of the subject tax for the years 1954, 1955 and 1956. The pertinent provisions of Code, 1931, 55-2-19a, as amended, read:

"Every action * * * to collect any tax (other than ad valorem tax on real or personal property), interest and penalty due the state * * * shall be brought * * * within five years next after the date on which the taxpayer is

required by the statute * * * imposing the tax, interest and penalty to file a return and pay the tax due thereunder, unless a different limitation is specifically prescribed * * *.

"The official of the state * * * who is charged with the duty of collecting any tax, interest and penalty the collection of which is affected by the limitation hereinbefore provided may, before the running of the five-year period of such limitation has been completed, enter into a written agreement with the taxpayer consenting to an extension of such period for an additional period of not to exceed two years, and any action * * * may be brought * * * to collect such tax, interest and penalty at any time prior to the expiration of the period so agreed upon. * * *."

The defendants assert that since the action to collect these taxes was not brought within five years from the date they were due and there having been no extension of the limitation in accordance with the provisions of the above quoted statute, this action can not be maintained.

On the other hand, the plaintiff relies, not on Code, 1931, 55-2-19a, as amended, but on Code, 1931, 55-2-8, which provides:

"If any person against whom the right shall have so accrued on an award, or on any such contract, shall by writing signed by him or his agent promise payment of money on such award or contract, the person to whom the right shall have so accrued may maintain an action or suit for the moneys so promised within such number of years after such promise as it might originally have been maintained within upon the award or contract, and the plaintiff may either sue on such a promise, or on the original cause of action, and in the latter case, in answer to a plea under the sixth section, may, by way of replication, state such promise, and that such action was brought within such number of years thereafter; but no promise, except by writing as aforesaid, shall take any case out of the operation of the said sixth section, or deprive any party of the benefit thereof: An acknowledgment in writing as aforesaid, from which a promise of payment may

be implied, shall be deemed to be such promise within the meaning of this section."

The above quoted two statutes are not in conflict. Each serves its purpose in circumstances where it is applicable. Code, 1931, 55-2-19a, as amended, provides a limitation of time during which an action for the collection of taxes may be maintained. It further provides the manner in which such limitation may be extended. Code, 1931, 55-2-8, provides a new period of limitation which runs from the time of a new promise to pay a debt. This is not an extension of the limitation but is a complete revival of the remedy for the collection of a debt.

Consider now the circumstances of the instant case. The plaintiff, on February 6, 1962, instituted an action to collect certain taxes for the years 1954, 1955 and 1956. Admittedly the five year statute of limitations prescribed in Code, 1931, 55-2-19a, as amended, had run. No agreement for the extension of such limitation had been obtained. On these facts alone the plaintiff doubtless would be barred from maintaining an action for the collection of such tax. However, further facts appear in the record of this case. It is undisputed that the defendants, by one of the partners and by counsel, acknowledged the existence of the debt, approved the agreement, and unequivocally promised to pay such indebtedness. These new promises to pay the amount owing on past due taxes were made in writing by letters dated July 1, 1957 and July 12, 1957. Clearly, the date of the action, February 6, 1962, was within five years of the new promises to pay.

It is a well settled rule that an unconditional promise to pay a debt tolls or removes the bar of the statute of limitations. 54 C.J.S., Limitations of Actions, Sec. 307; 12 M.J., Limitation of Actions, Section 54; 34 Am. Jur., Limitation of Actions, Section 290. This rule is embodied in our statute, Code, 1931, 55-2-8, which provides, in effect, that upon a new promise in writing a new period of limitation will be allowed. *Abrahams* v. *Swann,* 18 W. Va. 274, 41 Am. Rep. 692; *Walker* v. *Henry,* 36 W. Va. 100, 14 S. E. 440; *Quarrier's Adm'r.* v. *Quarrier's Heirs,* 36 W. Va.

310, 15 S. E. 154; *Stiles* v. *Laurel Fork Oil and Coal Co., et al.,* 47 W. Va. 838, 35 S. E. 986; *Hill* v. *Ringgold,* 112 W. Va. 374, 164 S. E. 412.

The fact that the statute of limitations has run on a debt does not extinguish that debt. *Cook* v. *Eastern Gas and Fuel Associates,* 129 W. Va. 146, 39 S. E. 2d 321; *Roots* v. *Mason City Salt and Mining Co.,* 27 W. Va. 483; *Ramey* v. *Ramey,* 181 Va. 377, 25 S. E. 2d 264. It merely bars recovery thereof. The effect of a new promise to pay, or a written acknowledgment from which a promise to pay may be implied, is to revive the period of limitation of the original obligation, and the new period of limitation begins to run from the date of the subsequent promise or acknowledgment. *Ingram* v. *Harris,* 174 Va. 1, 5 S. E. 2d 624.

The defendants in this case not only made a clear acknowledgment of a definite sum of money due and owing the plaintiff but also made an unequivocal promise to pay that sum of money. In so doing they brought themselves within the provisions of Code, 1931, 55-2-8. A new period of limitations was thereby created. That period is to be computed from the date of the letters in which the promises were made instead of the date the taxes were originally due and owing. The provisions of Code, 1931, 55-2-19a, as amended, are not applicable to the facts of this case.

Since the action to recover the taxes due and owing was instituted within five years from the date of the new promise to pay, we are of the opinion that the collection thereof was not barred by the statute of limitations, and that the trial court erred in holding otherwise.

Another and more compelling reason exists which makes necessary the reversal of the judgment order of May 29, 1963. The record clearly discloses that the State Tax Commissioner was given no notice as to the time for a hearing on the Carroll motion, wherein Carroll moved that the judgment of March 15, 1963, be set aside and that summary judgment be entered in his favor. The

record further discloses that the State Tax Commissioner did not appear at any hearing on the motion, if any hearing was held. Certainly, if the hearing was held on March 21, 1963, as indicated by the date noted on the motion, the plaintiff was afforded no opportunity to be heard. The motion was not served upon him until March 22, 1963. Defendant Carroll readily admits that no notice was given and that the State Tax Commissioner should have been afforded an opportunity to be heard on this motion.

R.C.P., Rule 7(b) (1), provides: "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing * * *." Defendant Carroll has complied with this rule in that his motion was in writing. Furthermore, said motion was filed and served on the plaintiff within ten days from the entry of the judgment order of March 15, 1963. However, no notice was ever given or served as to the time for the hearing on this motion. R.C.P., Rule 6(d), requires the service of such notice. It reads, in part, as follows: "A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 7 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court. * * *."

In the instant case the plaintiff was not even cognizant of any hearing on the motion. He was afforded no opportunity whatever to appear in opposition thereto. This practice is clearly contrary to the plain language and intent of R.C.P., Rule 6(d), and constitutes reversible error.

We are of the opinion, therefore, that this plaintiff, not having been served with a notice of a hearing on defendant Carroll's motion, as provided in R.C.P., Rule 6(d), and not having appeared, was denied a substantial right and is entitled to a reversal of the judgment entered pursuant to the hearing on the motion. To hold otherwise would be tantamount to a denial of his constitutional

right to due process. Constitution of West Virginia, Article III, Section 10.

The judgment of the Circuit Court of Tyler County is reversed and the case is remanded to that court with directions that it enter judgment for the plaintiff.

*Reversed and remanded with directions.*