Woodfield *vs.* Colzey.

---

Solomon Woodfield, plaintiff in error, *vs.* E. F. Colzey, defendant in error.

1. Physicians keeping accounts, which, by custom, become due at the end of the year, are entitled to interest on their accounts from the end of the year. They come within the equity of section 2031 of the Code, if not fairly within its very terms.

2. The verdict in this case, though not quite satisfactory, is not wholly unsustained by the evidence, and this Court will not reverse the judgment of the Judge of the Superior Court refusing a new trial.

Physician's account. Interest. Before Judge Johnson. Muscogee Superior Court. November Term, 1871.

E. F. Colzey instituted suit by attachment against Solomon Woodfield upon an account for medical services rendered, commencing on February 4th, 1867, running through the year 1867, and to May 18th, of the year 1868, amounting in the aggregate to $142 00, with a credit of $20 00. A charge of $3 00 is made for each visit, and $2 00 for each prescription. The defendant pleaded the general issue and payment.

Plaintiff testified as follows, to-wit: The account sued upon is correct; the services as therein stated were performed upon defendant and members of his family at his instance and request; the charges are reasonable; no part of the account, except $20 00, was ever paid, and that amount was not paid to plaintiff, but to his collector, Collier; defendant did not pay plaintiff $50 00 in January, or at any other time; nor did he pay plaintiff $25 00 in April, or at any other time; plaintiff is positive of this; did not see defendant for nearly six months previous to his leaving Columbus; plaintiff never made out an account against Mrs. Woodfield for $16 00; Collier never presented such an account as his collector to Mrs. Woodfield; Bob Wood was then acting as plaintiff's collector; he may have presented the account; plaintiff told Mrs. Woodfield to take her time about payment; never had any conversation with Mrs. Woodfield about her husband's having a part interest in a brig and going to Savannah.

Defendant testified as follows, to-wit: He did employ plaintiff as a physician as stated in the account from February 4th, 1867, to January 16th, 1868, but only until then. The first payment was made by defendant of $20 00, at the office of the Muscogee Railroad Company, some time in December, 1867; a second payment of $50 00 was made by defendant about January 5th or 6th, 1868, in Columbus; a third payment of $25 00 was made on April 13th, 1868, the day on which defendant left Columbus, to which place he has not since returned. The said payment was made at plaintiff's residence, plaintiff saying to the defendant at the time that it was the full amount of his bill; defendant left Columbus on the

Woodfield *vs.* Colzey.

day of the last payment. From the time of the last payment defendant has never received a bill or been in any way notified of any indebtedness, but rested satisfied with the assurance above mentioned.

Mrs. Solomon Woodfield testified as follows, to-wit: Plaintiff only paid her three visits in May, 1868, and a bill for $16 00 was afterwards presented to her by plaintiff's collector; shortly after defendant left, witness had a conversation with plaintiff, in which he stated that he had seen defendant a few days before he left, and that he had gone to Savannah, and had purchased or got an interest in a brig down there.

Plaintiff, in rebuttal, testified as follows, to-wit: Plaintiff paid Mrs. Woodfield nine visits in May, 1868; is certain of this, because his books show it. The entries were made each day when the visits were made. Plaintiff advertised in January, 1868, that he would only charge $1 00 per visit for visits in town; these visits were in the town; the advertisement only remained in the paper a week or so. Plaintiff's understanding was to be paid cash, though nothing was said about it in the advertisement. This advertisement was based upon the action of the Medical Board, which had a short time previously agreed to require cash for all services. The great majority of the medical business in Columbus has always been done on the credit system. Plaintiff visited defendant's niece several times for which he has made no charge.

The jury returned a verdict for the plaintiff for $88 00, principal, and $23 62, interest.

The defendant moved for a new trial because the verdict was against law, equity and the evidence, and the allowance of interest unwarranted by the law and facts of the case.

The motion for a new trial was overruled by the Court, and defendant excepted, and now assigns said ruilng as error.

Moses & Downing, for plaintiff in error.

The verdict was without evidence: 4 Ga. R., 428; 33 *Ib.*, 494; 43 *Ib.*, 343. The plaintiff was bound by his advertisement: Greenleaf on Ev., 1st vol., secs. 27, 195, 207; 24

E. C. L., 457; 64 E. C. L., 863.    The verdict was against law and equity: 39 Ga. R., 81; 30 *Ib.*, 332; 22 *Ib.*, 544; 12 *Ib.*, 45; 8 *Ib.*, 71.    The amount of interest is unauthorized: Code, secs. 2030, 2037; 31 Ga. R., 326; 14 *Ib.*, 382; 18 *Ib.*, 410; 15 *Ib.*, 332; 2 *Ib.*, 375; 1 *Ib.*, 287.

BLANDFORD & CRAWFORD, for defendant.

McCAY, Judge.

Section 2031 of the Code, declaring that the accounts of merchants, tradesmen and mechanics, which, by custom, become due at the end of the year, bear interest, etc., does not, in its terms and by express language, include the accounts of physicians; but they are clearly within its equity, as are all the accounts of persons doing a regular business, so as to establish a custom as to the time their accounts become due; for that seems to us the point of this section.    The Legislature is not to be presumed to pass laws for the benefit of special trades or occupations.    The point of the section is, that persons doing a regular business, so as to establish a custom, that accounts made with them in that business are due at the end of the year, shall have interest on the amount actually due from the time it is due.    We think, too, it is no straining of the section to include physicians within the very words of it.    The word "tradesman" does not, perhaps, ordinarily, cover physicians; but they have a trade, an art, a mystery.    They usually give it a more dignified name, to-wit: profession; but, as time rolls on, and new ways come in, we have professors of dancing, and of almost every other occupation.    One of the definitions of trade, given by Webster, is, "the business a man has learned, by which he earns his livelihood."    And this, at last, is the point of the word.

In our mother country, England, any person earning his own livelihood was *in trade*, it being the fashion there, as it is with some people here, to think a man who labors for his living as less respectable than a man who lives on the labors of his parents, or of somebody else than himself.

We do not think the evidence *demanded* a verdict for the amount found, but there is evidence to sustain it. Dr. Colzey says his advertisement meant *cash,* and there is no evidence that the defendant was misled. As to the credits, it was for the jury to believe Dr. Colzey or the other witnesses. The jury, under our law, passes upon the facts, and the verdict of a jury ought to be final, unless it be illegal. We do not think this one without evidence, though we think it might very properly have been for less.

Judgment affirmed.