28473.   MARTIN *v.* MAYER.

Decided October 17, 1940.

392

394

*James J. Slaton,* for plaintiff in error.   *Albert E. Mayer,* contra.

SUTTON, J.   ■   In the petition it was alleged, that the plaintiff rendered services to the defendant's wife in the treatment of an active case of pulmonary tuberculosis; that during January, 1931, or thereabouts he "was consulted by defendant, and at the instance of defendant," in such treatment; that in connection with the treatment the plaintiff "received numerous telephone calls, telegrams, and letters of consultation, x-rays, and medical reports, some from defendant, and some from the local physician in Atlanta, who was treating defendant's wife, and some from Dr. Paul H. Ringer, a physician in Asheville, North Carolina, who had been engaged to treat defendant's wife," and that "all of such communications and consultations were with the knowledge, consent, and approval of defendant;" that in Atlanta, at the residence of defendant, "and with the knowledge, approval, and request of said defendant," the plaintiff examined and prescribed treatment for the defendant's wife; that her condition was such that plantiff recommended that she be moved immediately to Saranac Lake, New York, for treatment, and this recommendation was followed, and that from about May 5, 1931, until about September 26, 1931, he furnished her expert medical treatment, as a result of which she left there with the active pulmonary tuberculosis fully arrested and in a good state of health; that "all of the aforesaid services were

furnished at the instance and request of defendant and were necessary to effect a cure, of defendant's wife." The petition further alleged that the reasonable value of such services was $3050, which sum defendant had agreed upon as being a proper and correct charge, and has repeatedly agreed to pay the same; that he has paid upon said indebtedness the sum of $1300, leaving due the plaintiff the sum of $1750, with interest at 7 per cent. per annum from October 1, 1931.

In response to the first demurrers set out in the foregoing statement of facts, the court, on October 13, 1939, passed an order requiring the plaintiff to amend in certain respects. The order specified that if the plaintiff sues upon an account, such intention should be made more clear, and the items should be set out and the reasonable value therefor should be stated, and in such a suit it should be shown who employed the plaintiff. It was recited, that if the plaintiff wished to sue upon an agreement to pay a stated sum, he should state clearly what the agreement was and with whom made, in which case an itemized statement would not be necessary; that if he desired to sue on both quantum meruit and an agreed sum, the claims should be set out in two separate counts; and that, having alleged a promise to pay as relieving the bar of the statute of limitations, he should attach to his petition a copy of the alleged agreement. The plaintiff was required to amend within thirty days, "in default of which the petition will stand dismissed." The plaintiff amended within thirty days, by bringing the suit in two counts, count 1 being based on an account stated, and count 2 being based on the same indebtedness on a quantum meruit basis. In count 1 it was alleged, that no agreement was entered into as to the amount to be paid for the services rendered to the defendant's wife, but that the reasonable value of the same was $3050, for which amount plaintiff submitted a statement prior to March 1, 1932, which sum was sued for as an account stated; that after the statement was submitted, the amount fixed by plaintiff as the value of his services was agreed upon and fixed in writing, and defendant promised to pay the same, it being alleged that such agreement of the defendant fixing and agreeing upon said amount and promising to pay the same, together with subsequent admissions in writing of said defendant of his liability for the indebtedness and his written promise to pay, is shown by

correspondence between him and the plaintiff, copies of which are attached to the petition as exhibits Nos. 1 to 37, inclusive, and which are hereinafter discussed. It was alleged that the medical services rendered were necessary for the proper treatment of defendant's wife and "were rendered at the request of defendant, with his knowledge and consent, and with the consent of defendant's wife." It was alleged, in reference to some signatures to the letters attached to the petition, that "Rudd" or "Ruddy" refers to an agent of the plaintiff, and "Edgar" refers to the plaintiff, and "Carlisle" refers to the defendant; and that wherever in the correspondence reference is made to an account or indebtedness, such account or indebtedness is that owing by defendant to plaintiff for treatment, medical attention, and services rendered and procured to be rendered to the wife of defendant by plaintiff as aforesaid. It was alleged that the defendant had paid $1300, leaving owing and due the plaintiff upon the aforesaid account $1750, with interest thereon at 7 per cent. per annum from October 1, 1931.

Count 2 of the amendment alleged, that defendant's wife became afflicted with an active case of pulmonary tuberculosis, and that early in 1931 plaintiff was consulted by defendant; that "on or about May 1, 1931, your petitioner, at the instance of said defendant, was requested to come to Atlanta, Georgia, to examine and prescribe for defendant's wife; "that after arriving in Atlanta and examining her and recommending that she be sent to Saranac Lake, New York, this was done, the plaintiff having her under his care en route; that by reason of making the round trip he was absent from his office five days, and the reasonable and ordinary compensation due him on that account is $1000; that after arriving at Saranac Lake he treated defendant's wife and cured her of active pulmonary tuberculosis; that he treated or procured treatment for her there continuously from May 5, 1931, to September 26, 1931, and included in the services so rendered were residence calls upon her throughout the entire period aforesaid, pneumothorax treatments, phrenectomy, fluoroscopic examinations, sputum examinations, and x-ray pictures throughout the period aforesaid, all of which were of the reasonable value of $2050; that such services were necessary for the proper treatment of her, and "were rendered at the request of defendant, with his knowledge and consent, and with the con-

sent of defendant's wife;" that the defendant admitted in writing his indebtedness and promised in writing to pay it, which writings consist. of the letters referred to in count 1 of the petition as amended; that each of two checks sent to the plaintiff by the defendant, one dated May 4, 1935, for $100, and the other dated June 25, 1936, for $100, "carried notation in the handwriting of defendant that such check was paid on account;" and that defendant paid $1300 on the account, leaving due plaintiff a balance of $1750 principal, with interest at 7 per cent. per annum from October 1, 1931. The amendment of February 22, 1940, alleged, in respect to each count of the petition, that during the time the letters were written there was no indebtedness owing by defendant to plaintiff, except the indebtedness referred to in each count of the petition.

One of the grounds of the motion to dismiss was that the amendment had not met the objection of the demurrer that the petition did not show who employed the plaintiff, and that under the order of the court the action automatically stood dismissed at the end of thirty days. We are of the opinion that the petition as originally drawn alleged by whose authority the physician's services were rendered, in that it was alleged that in January, 1931, he was consulted by the defendant in connection with treating the defendant's wife; that he came to Atlanta to examine and prescribe for her, after certain communications and doings by the defendant and others "with the knowledge, consent, and approval of the defendant," and that he immediately went to the residence of the defendant, and with the knowledge, approval, and request of the defendant examined and prescribed treatment for her; that he afterwards performed detailed services for her; and that all of the aforesaid services were furnished *at the instance and request* of defendant and were necessary to effect a cure of defendant's wife. These allegations were of themselves sufficient to entitle the plaintiff to submit to a jury the question whether or not he had been employed by the defendant. It would be a strained construction to say that a person had not been employed by another when he had been requested to do an act and had performed it.

It is properly contended by counsel for the plaintiff in error that the order requiring an amendment to the petition became the law of the case; and that if any part of the order unexcepted to was

not complied with by the plaintiff, the action automatically stood dismissed at the end of thirty days. But the further contention that the action in fact stood dismissed, on the theory that the court had ordered that by amendment allegations be made as to who employed the plaintiff, and that such order was not complied with, is without merit. The order of the court did not require that it be alleged *in an amendment* as to who employed the plaintiff, merely reciting that in a cause of action it was necessary to allege who employed the plaintiff, and as the original petition was sufficiently definite in that respect, the order of October 13, 1939, as subsequently construed by the court in its order overruling the motion to dismiss, could not reasonably be construed to mean that the court intended to place upon the plaintiff a greater burden than that required by law by ordering that the allegation in the original petition as to employment be repeated in an amendment. The petition, in the opinion of the trial court, was defective in not showing precisely upon what cause of action it was predicated, partaking of the nature of a suit upon an account and not upon an agreed sum, and in its order the court proceeded to outline, not so much what should be in an *amendment* to complete an action upon an account stated or a suit upon a quantum meruit basis, but what allegations should exist to make out the respective causes of action; and it was stated that "If the plaintiff wishes to sue on both quantum meruit and an agreed sum, the claims should be set out in separate counts." The court's order recited what was necessary to constitute a cause of action, and the plaintiff was required to amend within thirty days, so that the petition as amended would contain the allegations which the court considered necessary "as herein indicated." Whether the order of the court had been complied with, as to setting out a cause of action, must be ascertained from an inspection of the petition and the amendment, and then determining whether or not any of the necessary ingredients pointed out by the court is lacking in the *petition as amended*. It is apparent from the order of May 1, 1940, that the court was *construing* (and not *modifying,* as contended by counsel for the plaintiff in error) the order of October 13, 1939, as affecting the sufficiency of an allegation as to the employment of the plaintiff, and was in effect stating that the judge then considered the original allegation in this respect sufficient, and that the order, as con-

strued by the court itself on March 1, 1940, was not intended to require, and did not require, any further allegation as to the employment of the plaintiff. However, it was in fact alleged by the amendment who employed the plaintiff, as follows: "Your petitioner shows that all such medical services were necessary for the proper treatment of defendant's wife, and that they were rendered *at the request* of defendant, with his knowledge and consent, and with the consent of defendant's wife." (Italics ours.)

Another ground of the motion to dismiss was that the amendment failed to comply with the order of court that "If the plaintiff wishes to sue upon an agreement to pay a stated sum, he should state clearly what the agreement was, and with whom it was made." The amendment complied with the order of court. The petition as amended in count 1 sufficiently set out an account stated. "'An account stated is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment.' *Ward* v. *Stewart,* 103 *Ga.* 260, 262 (3) (29 S. E. 872); *Moore* v. *Hendrix,* 144 *Ga.* 646 (87 S. E. 915); *Borders* v. *Gay,* 6 *Ga. App.* 734 (65 S. E. 788). Bouvier defines an account stated as 'An agreed balance of accounts. An account which has been examined and accepted by the parties.' An account stated establishes the creditor's claim and entitles him to bring an action on it as a liquidated demand; and in the absence of fraud or mistake an account stated is conclusive upon the parties." *Phillips* v. *Ableson,* 60 *Ga. App.* 558, 559 (4 S. E. 2d, 411). "In order to convert an open account into an account stated, an oral agreement as to the amount and an oral promise to pay is sufficient." *Murray* v. *Lightsey,* 58 *Ga. App.* 100, 101 (197 S. E. 870), and cit. The petition as amended alleged, in count 1, that the plaintiff rendered certain services of the value of $3050, for which a statement was submitted to the defendant; that no agreement fixing the amount of compensation was entered into originally, but that after the statement was submitted the defendant verbally agreed upon such an amount and promised to pay the same, and also agreed upon and fixed such amount in writing, and subsequently admitted in writing his liability for the indebtedness and promised to pay the same, as evidenced by correspondence, copies of which letters were attached to the petition as exhibits and made a part thereof. These allegations, in so far

as the motion to dismiss is concerned, constituted a sufficient compliance with the court's order as to count 1.

Likewise the allegations of count 2 in the amendment sufficiently complied with the court's order that "If he sues upon an account and reasonable value for services rendered, that should be made clear; the items of the account should be set out, and the reasonable value for the different items sued for should be stated." In count 2 the plaintiff bases his suit upon an open account and alleges the reasonable value of the services to be $3050. It is shown that $1000 of this amount represented a charge for professional attention to the wife of defendant, and five days lost time or absence from his office in coming to Atlanta and examining and prescribing treatment for her and in taking her to Saranac Lake, New York, for proper medical services, and that the amount charged was a reasonable and ordinary compensation for such service. It is shown that the balance of the amount of $3050 covers medical attention and services at Saranac Lake, New York, from May 5, 1931, to September 26, 1931, including certain detailed services and examinations by scientific appliances. Doctors can not be expected to render bills for their services with the detailed itemization that may be customary in the sale of commodities from stores, and the order of the court could not reasonably be construed to require a figure on every item of service rendered. Generally it may be said that it is largely the skill and knowledge, exercised for a given time, for which a patient pays, rather than for the acquirement of physical things. We think that the amendment, giving the information above referred to, and with the division of the charge as shown, was a sufficient compliance with the court's order, and shows facts in enough detail to enable the defendant to contest before a jury the reasonableness of the charge. The petition as amended was not subject to dismissal for any reason urged in the motion to dismiss, and the court did not err in overruling the same.

■ Enough is shown in the preceding discussion to require this court to hold, as we do, that count 1 of the petition as amended set forth a cause of action on an account stated, and that count 2 set forth a cause of action on an open account for the reasonable value of the services rendered by the plaintiff. The court did not err in overruling the general demurrer in these respects. The

ground of the general demurrer that the suit based on either cause of action has been barred by the statute of limitations requires further examination of the pleadings. Any right of action arose in September, 1931, upon the completion of the services to the defendant's wife, and suit was not brought until June, 1939, more than four years thereafter. Clearly the suit was barred by the statute of limitations unless the letters attached to the petition as exhibits had the effect of relieving the bar. "'A new promise, in order to renew a right of action already barred, or to constitute a point from which the limitation shall commence running on a right of action not yet barred, shall be in writing, either in the party's own handwriting, or subscribed by him or some one authorized by him.' Code, § 3-901. 'A written acknowledgment of an existing liability is the equivalent of a new promise to pay, and constitutes a new point from which the statute of limitations begins to run.' *Harrell* v. *Davis,* 108 *Ga.* 789 (2) (33 S. E. 852); *Lambert* v. *Doyle,* 117 *Ga.* 81 (2) (43 S. E. 416). Although an action to recover on a debt may be barred by the statute of limitations, the debt is not extinguished thereby. The limitation laws act only upon remedies, and do not extinguish rights [citing]. . . 'A new promise shall revive or extend the original liability; it shall not create a new one.' Code, § 3-904. A plaintiff may amend his petition by alleging a new promise to pay, made after the original debt or claim became barred [citing]." *Sinclair Refining Co.* v. *Scott,* 60 *Ga. App.* 76, 78 (2 S. E. 2d, 755).

It is properly contended by the plaintiff in error that any acknowledgment of liability and promise to pay, made by the defendant more than four years before the bringing of the present suit, would not relieve the bar of the statute, and that only the letters written within four years before the filing of the action can be relied upon to show an acknowledgment and promise to pay. It is further contended that the letters written in this period do not in fact show an acknowledgment and promise to pay the indebtedness sued on, and that the letters written before such period can not be looked to in determining this question. The rule as to the evidential value of letters relied on to create a new promise to pay an indebtedness otherwise barred by the statute of limitations is as follows: "'Where letters acknowledged to have been written by the defendant are relied on to create a new promise to pay an

existing open account [a promissory note not under seal in the instant case] which on its face is barred by the statute of limitations, such letters must, to have such effect, with reasonable certainty, *of themselves* connect the debt with the promise, and sufficiently identify the debt. By their words they must acknowledge the particular debt as an existing liability, in order to remove the bar of the statute.'" *Duke* v. *Lynch,* 56 *Ga. App.* 331 (192 S. E. 335), and cit. Whether or not such letters of themselves show an acknowledgment of the debt sued on may, however, be determined by aliunde proof. "It has been decided that letters written by a creditor, requesting payment, and referred to in letters written by the debtor in reply thereto, are, to the extent that they make intelligible the letters of the former [latter?] a part of such letters, and in connection therewith are admissible in evidence, and that it is competent to prove the contents of such letters by secondary evidence where the originals are not procurable. And in several cases it has been held that a chain of letters from the debtor to the creditor may be introduced in evidence to show an acknowledgment in accord with the statutory provision." 17 R. C. L. 892, § 250. "When the promise is evidenced by letters, all of the letters relating to the debt, although they are separated by a considerable period of time, may be taken into consideration in determining whether a new promise was made and whether that promise was unconditional. A debtor's letter is to be construed in connection with the creditor's letter to which it is a reply, and indefiniteness of a letter in identifying the debt referred to may be removed by oral testimony that it was written in answer to a letter from the creditor which identified the debt, although several letters containing detached statements which, all together, do not constitute a definite acknowledgment, are no doubt insufficient." 37 C. J. 1127, § 604. "In an action on a promissory note, which is apparently barred by the statute of limitations, the bar of the statute may be relieved, and a recovery be authorized, by proof of such an acknowledgment of the debt, in writing, signed by the promisor, as will support the inference of a new promise to pay the obligation. Such an acknowledgment may be established by the contents of a letter written by the maker of the note; and even though the note be not identified by specific reference to its date, the question as to the sufficiency of the language used in the

writing to identify it is for the jury. Extrinsic evidence may be used in aid of the identification of the note referred to in the writing acknowledging the indebtedness; and when the finding of the jury, that the debt in issue has been identified in the writing acknowledging the indebtedness, has been approved by the trial judge, his discretion in that regard will not be controlled, if the evidence authorized the finding." *Duncan* v. *Redd*, 14 *Ga. App.* 306 (2, *a*, *b*) (80 S. E. 726).

Under the above authorities we think that, while the letters written by the plaintiff and defendant more than four years before the bringing of the present action are not admissible to show an acknowledgment by the defendant of the original indebtedness of $3050, equivalent to a new promise to pay and effecting a revival of such obligation so as to make the present suit maintainable, they are admissible for the purpose of identifying any indebtedness acknowledged by the defendant in his letters written within the four-year period before the filing of the present suit. An examination of these letters will now be made. The exchange of correspondence between the plaintiff and defendant, consisting of thirty-seven letters, began on March 11, 1932, and was concluded on September 6, 1938. In the period before the four years immediately preceding the filing of the present suit, the following is in substance shown by the correspondence: The plaintiff had rendered certain medical treatment to the wife of the defendant. It appears from one or more letters of the defendant, that the plaintiff, for the purpose of examining and prescribing treatment for the defendant's wife, and without his being consulted, was brought to Atlanta by a third person, or was induced to make the trip; that the bill of plaintiff "floored" the defendant, and that had he been handling the matter he would have avoided much of the expense, and would have taken his wife to the plaintiff in New York and obviated the loss of time of plaintiff from his office and practice; that, however, he appreciated the remarkable recovery he had brought about, and on the question of liability, etc., and in response to letters from the plaintiff in regard to payment of the account, wrote from time to time as follows: "If it was possible for me to send you a check I would do so with this letter, but business with us has been so terrible it is almost unbelievable. . . If you can see your way clear to bear with me for a while,

I am sure that everything will work out to your satisfaction. I realize very clearly it is difficult to set a value on such service as you performed in Maude's case in monetary terms. You may be sure that I understand your position completely, and will see that you are remunerated as soon as it is humanly possible. . . I know you are aware that it has been a very unhappy situation for me that I have not been able to pay you the whole amount of the bill a long time ago. . . I assure you that your bill will be-- paid as soon as it is humanly possible. . . Conditions have been awful with us, our entire works being practically shut down; still I want to assure you that as soon as I am able, I intend taking care of your account. I only regret that I have not been able to do it a long time ago."

On February 27, 1933, the plaintiff wrote and acknowledged receipt of $1000 from the defendant, which he was "crediting on" his account. The defendant, after explaining some unforeseen expense, wrote that he was "doing everything I can to keep things afloat, and the minute it's possible will start sending you so much per month until the account is paid. . . When business improves and things get on an even keel feel sure it will be possible to close out the account in a comparatively short space of time. I'm just up against it now, and have been for the last two years and a half. . . I hope things will improve so that I can pay you very soon. You may rest assured I will do so without your having to even write me. . . As you are aware, I sent you a check for $1000 a few years ago. When Mr. Leach brought you down to Atlanta on his own responsibility, without consulting me in any way, I naturally thought you and he had come to some agreement or arrangement. Since losing all of my money in the 1929 crash, I could not have possibly thought of asking you to come to Atlanta unless I knew how much it would cost, and that I had the cash to pay you on arrival. My arrangement would have been to put Maude on the train and send her to you in Saranac. Mr. Leach incurs this terrific expense, and leaves it to me to pay when I haven't any money and can't get any, having absolutely no collateral. Regardless of who incurred it, if I had it you would have a check if for only a portion with this letter. Why don't you call on Mr. Leach at his office, 60 Wall St., and talk the matter over with him? Simply say I have written you

to the effect that I have absolutely nothing to pay with, and see what his reaction is. I so wish this account could be straightened out. You have been most considerate, and no one could possibly appreciate all you have done for Maude any more than I do. You have been simply marvelous to us in every way, and it grieves me deeply that I can't pay you right now. . . In reference to your letters of March 8th and April 13th, want you to know that this matter has been worrying me a great deal, and it is not my desire to evade or shirk any responsibility. As written you previously, if I had the money you would be the first one to receive it. Of course, times are quite different to what they were in 1929 and 1930, and when one hasn't the money and no way of getting it makes it very embarrassing. I have been discussing with a friend here my unhappy situation in connection with your bill, and believe it may be possible to borrow one hundred dollars each 60 days up to the amount of $1000, and am wondering, in case this is possible, if you could see your way clear to cancel the remainder of the indebtedness, namely $1050. . . I originally paid you one thousand dollars, with the hope that I would be able to go right ahead and clear up the whole matter. However, as you know, in the last three years business has been almost impossible. . . It is needless for me to say that if I had the money you would be paid at once; however, I simply haven't got it. . . Am going to suggest that I mail you each 60 days a check for $100, and when I have paid you $1000, which I think is a reasonable amount, will discuss the matter with you again, and if at that time I can pay you an additional amount will do so."

The petition alleged that the amount of the bill was $3050 before any payments were made thereon, and alleged that during the time of the correspondence between him and the defendant the latter was indebted to him on only one account. It will be observed from the latter part of the above-quoted correspondence that the defendant identified the debt about which he was writing as being in the original amount of $3050, because he referred to the fact that he had remitted $1000 to the plaintiff and that he was wondering if the plaintiff would cancel $1050 if the defendant succeeded in borrowing $1000 and paying the plaintiff that amount. At that time the defendant apparently recognized that the balance claimed by the plaintiff was $2050, but, as shown by the petition,

only $300 of this amount was afterward paid, leaving a balance of $1750. The recognition of liability and implied promise to pay, as illustrated by the correspondence from which we have quoted, would not support the present action, because the letters were before the four-year period immediately preceding the filing of the suit, but may be considered by the jury in determining whether or not the letters within the four-year period preceding the filing of the suit sufficiently identified and acknowledged the indebtedness sued on.

On January 10, 1936, within the four-year period next before the filing of the suit, the plaintiff, through his secretary, wrote to the defendant, expressing regret at the "necessity of delving into the matter of the account again," and referring to some anticipated notes of the defendant which had not been received. Thereafter the defendant wrote a number of letters from which we quote as follows: "Have just received your good letter of recent date, having been away for two weeks on an extended business trip. Am sending you a check within a day or two for a substantial sum on account, and trust this will be satisfactory. . . Please believe me, it is not my intention to delay this payment [a check within a few days], and I will forward check to you at the earliest possible moment. Have some bonus money coming to me the first of the summer, and will give you a large slice of it. . . Have just received your good letter of the 27th, regarding the account, and in reply want to say I will try and send you a couple of hundred dollars this month. . . You can not imagine how really anxious I am to pay off the account. It's just been that I haven't had or been able to get the money. Will let you hear from me shortly. . . Am enclosing check for $100. My bonus check the Veterans Bureau advise should be along in ten days or two weeks, and then I can give you a really sizeable check. Don't know how much money I'll get, but think I can send you four or five hundred dollars. Will forward this to you the day the check arrives. As to the note proposition, simply can't see my way to comply with your suggestion in this respect, as I just don't know whether it would be humanly possible to meet them as they fell due. Have several other deals on the fire, so to speak, and hope to pick up some extra money so that your account will be closed out at the earliest possible moment. . . Please realize that it's my most sincere desire

to close out the whole account, and I am hoping it will be possible at least by the end of the year. . . Yours of June 7th received, regarding my account. As I have written you so often, sincerely wish I could pay the thing off. However, at the present time simply haven't got it. . . Please understand I want to pay you, but I can't very well when I haven't got it and can't get it under the conditions that have existed these last eight years. During my absence from the office the last week a letter was received from Mr. Stanley J. Mayer, 90 Broad Street, New York City. He advised that you have turned over to him for collection the balance of my account. . . With my meager salary and no other resources, the bill you submitted, and over which I had no control, simply floored me. Had I been handling the matter and had any idea that the person who made the arrangements for you to come to Atlanta was not going to take care of the account, I would have brought Maude to you instead of having you come to her in Atlanta. I feel sure, knowing you as I do, that after giving the above your best thought you will have some better conception of my position, and before taking any drastic action will consider the problem from my angle. As I recall, when we had this matter up once before, you agreed to take $1000 off the bill after two thousand dollars was paid. At any rate, Edgar, I would appreciate an expression of your opinion regarding the above, without bringing any lawyers or others into the picture. Regardless of the strain it would place on me, we might possibly arrange some small monthly payments."

We think that the above letters, taken in connection with previous correspondence in which the defendant identified the account as being of the original amount of $3050, as alleged in the plaintiff's petition, could be found by the jury to show an acknowledgment on the part of the defendant of the indebtedness sued for, together with a promise to pay the same. Consequently it must be held that the petition as amended is not subject to the objection that the suit is barred by the statute of limitations, and that the court did not err in overruling the ground of the general demurrer in that respect.

■ Grounds 2 and 3 of the special demurrers of February 23, 1940, comprise objections to allegations of the petition that no indebtedness was owing the plaintiff except that referred to in the

correspondence between the parties, it being contended that the writings can not be explained by extrinsic evidence. These objections are controlled adversely to the plaintiff in error by what has already been said in the foregoing opinion.

Ground 4 of the special demurrer raises the objection that the original verification of the petition could not be withdrawn as was done by the plaintiff. Under the broad power of amendment as contained in the Code, § 81-1301, the plaintiff had the right to strike the verification to the petition, which was not of an equitable nature, the right remaining in the defendant also to strike the verification of his answer; and no merit is shown in the objection. Grounds 3, 7, and 13 of the special demurrer of December 26, 1939, raise the objection that the petition did not show who employed the plaintiff, and are without merit, for the reasons shown in the foregoing opinion. The objection raised by the fourth ground of the special demurrer, that the amendment to the petition should have been sworn to, is without merit, inasmuch as the verification of the original petition was stricken. The objection in grounds 5 and 6, that count 1 of the amendment is multifarious, in that suit is brought on a verbal account stated and also on a written account stated, are without merit. Only one account stated is set forth, and the allegations objected to merely show that it was agreed upon by the defendant both orally and in writing. The eighth special ground raises the objection that the allegations in paragraph 2 of count 1 of the amendment, that the defendant "verbally agreed upon and fixed said amount, and said defendant promised to pay the same," are vague and indefinite in that it is not alleged when and where the agreement and promise took place. While the allegations are subject to the criticism, the defect is not such as to cause a reversal of the judgment, inasmuch as the petition shows that the plaintiff really relies on the written correspondence to establish an acknowledgment of the indebtedness sued on; and the allegations demurred to will be treated as surplusage. Grounds 10 and 11 raise objections which go to the sufficiency of the letters dealt with in the foregoing opinion and are controlled adversely to plaintiff in error by what is therein said. Ground 12 raises the objection that the letters are evidentiary and can not be attached to the petition. These letters constitute a part of the cause of action, and were properly attached to the petition. Code, § 81-105; *Thornton* v. *Nichols,* 119 *Ga.* 50 (3) (45 S. E. 785).

The objection in ground 14, that the allegations in paragraph 2 of count 1 of the amended petition, as to certain $100 checks remitted by defendant to plaintiff, bearing notation that each was paid on account, are evidentiary and prejudicial, immaterial and irrelevant, in that there is no issue as to the payments made on the account and the checks do not relate to an account stated or aid in preventing the bar of the statute of limitations, is without merit. These allegations were properly made for the purpose of proof of facts to be considered by the jury in connection with other documentary evidence on the question whether or not the defendant in writing acknowledged the indebtedness sued on. Grounds 15 and 16 raise objections to allegations of the petition as to identities of persons represented by certain signatures in the correspondence between the parties. These allegations are proper for the purpose of proof of such identity, and are not subject to the objections urged. Ground 17 is similar to grounds 15 and 16, and is without merit, for the reasons given above. Ground 18 raises the objection that the claim of the plaintiff for interest on the account from October 1, 1931, should be stricken. Under the Code, § 57-111, an account of "merchants, tradesmen, mechanics, and all others," shall bear interest from the time at which by custom it becomes due. In *Woodfield* v. *Colzey,* 47 *Ga.* 121, it was held that a physician comes within the purview of the statute. If the plaintiff, on the trial of the case, is able to show that by custom the account against the defendant for services rendered to his wife became due upon the completion of the services in September, 1931, he would be entitled to recover interest upon such amount as is proved to be due him. Hence the allegation as to interest is not subject to the objection urged. Grounds 21, 22, and 23 raise objections similar to some of those hereinbefore dealt with, as conceded by the plaintiff in error, and are likewise without merit for the reasons given. Ground 24, complaining that the allegation that the plaintiff was consulted by the defendant "in the early part of 1931," is not, in connection with other allegations of the petition, subject to the objection urged, that a more specific date should be alleged. The allegation that the plaintiff had a "large and lucrative practice" is not subject to the objection raised in ground 25, that it is immaterial, irrelevant, and prejudicial. The allegation in ground 26, that the allegations of

the petition as amended do not set out with sufficient particularity the items entering into the account sued on, is disposed of adversely to plaintiff in error by what has been said in the foregoing opinion. The ground of objection in ground 27, that as part of his bill the plaintiff could not charge for the time lost from his office in proceeding to Atlanta to examine and prescribe for the defendant's wife, is obviously without merit. The objections in grounds 20 to 36, inclusive, have been dealt with in the foregoing opinion, and are without merit. Further discussion is deemed unnecessary.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., dissenting. I think the motion to dismiss should have been sustained. The order that the petition should stand dismissed unless amended provided, in addition to the provisions set out in the majority opinion, as follows: "Only the parts of the demurrer which have reference to the foregoing requirements are now passed upon; but those parts are hereby sustained, and the plaintiff is required to amend *as herein indicated* within thirty days from this date, in default of which the petition will stand dismissed." (Italics mine.) The amendment to the petition within the thirty days allowed did not meet the requirements of the judge's order in one particular, in that it did not allege who employed the plaintiff to render the services. I do not agree with the majority that such an allegation was not required by the demurrers; but whether it was or was not is immaterial. The trial court adjudged by its order that the allegation was essential, and such adjudication became the law of the case, which in the absence of a motion to modify it, made at the term at which it was rendered, the judge had no authority to change or modify at a subsequent term. What the judge may have thought the effect of his ruling was, and whether he thought his order required of the plaintiff more than the law authorized, would make no difference. He signed the order which speaks for itself, and the amendment does not meet it. The ruling in *Wilson* v. *Elijah A. Brown Co.*, 62 *Ga. App.* 898 (10 S. E. 2d, 219), does not conflict with the views herein expressed, because in that case the judge did not provide, in his order dismissing the case unless amended within a certain time, in what particulars the petition had to be amended. He simply provided that unless the petition "be amended." In such

a case it could not be ascertained just what amendment would save the petition. In this case the order very definitely showed how the petition was required to be amended.

Furthermore, I think the allegation as to who employed the plaintiff was necessary to the petition in both counts. Unless the wife employed the plaintiff as agent of the husband, or unless he was employed under such circumstances that the law implied a promise on the part of the husband to pay the debt on the theory that such amounted to employment by the wife as agent for the husband for necessaries, or unless the husband employed him either by himself or through an authorized agent, the husband would not be liable to the plaintiff unless the husband contracted to become liable subsequently for a consideration flowing to him or the person already liable for the debt. If the husband was not liable for the debt originally, his subsequent promises to pay would not make him liable in the absence of a present consideration, because the past consideration, the rendition of the services, would not constitute a valuable consideration which may be the basis for a binding contract. The guarded, evasive allegations of the petition do not amount to an allegation that the defendant employed the plaintiff to render the services. For these two reasons I think the defendant's motion should have been sustained, and the action dismissed on the failure of the plaintiff to make the required amendment.